UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert DILTZ, Defendant-Appellant.

No. 79–1058.

United States Court of Appeals,
Tenth Circuit.

April 25, 1980.

John Oliver Martin, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty., and Douglas B. Comer, Asst. U. S. Atty., Kansas City, Kan., with him on the brief), for plaintiff-appellee.

Randolph G. Austin of Hackler, Londerholm, Speer, Austin & Holliday, Olathe, Kan., for defendant-appellant.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The question in this case is whether the trial court committed error in its denial of the motion of the defendant-appellant Robert Diltz, which motion sought to suppress evidence obtained from an authorized wiretap and order that did not identify the defendant Diltz as one of the persons to be intercepted. It is the defendant's contention that in truth he was a target. The government's position is that its omission to name defendant Diltz in its application for an order authorizing a wiretap of a codefendant, Charles D. Bremson, Jr., was attributable to the fact that it did not have probable cause to believe that defendant Diltz was engaged in the criminal activity which was the subject of the investigation. The ultimate inquiry is therefore whether there existed probable cause at the time that a wiretap order was sought that Diltz was engaged in criminal activity.

The application which is here drawn into question was made by the United States Government to the United States District Court for the Western District of Missouri. The government sought an order authorizing interception of wire communications of Charles D. Bremson, Jr. Pursuant to the application, the judge entered an order on April 24, 1978, which authorized the interception of Bremson's telephones for a 20-day period starting April 24, 1978 and ending May 13, 1978.

On July 13, 1978, the Grand Jury indicted a number of individuals including the defendant-appellant Robert Diltz.

In accordance with 18 U.S.C. § 2518(8)(d), the requisite inventory notice of electronic surveillance was provided to each of the defendants including defendant Diltz on August 10, 1978. This communication was for the purpose of insuring that each defendant knew that an application for an order authorizing interception of wire communications of Bremson had been made on April 24, 1978, and that the United States District Court had entered an order authorizing the interception on April 24, 1978, for a period of 20 days from that date. The inventory was also given to each defendant

so as to provide notice that there had been an interception during the 20-day period. The notice of inventory was filed by the United States Government with the United States District Court for the District of Kansas on August 11, 1978.

Diltz filed a motion to suppress based on his contention that the applicant for the wiretap order knew at the time of court authorization that there was probable cause to believe that Robert Diamos, who was the same person as Robert Diltz, the defendant herein, and others, would be using the telephone that was to be tapped.

A Memorandum and Order dated and filed October 11, 1978, stated that the contention that the authorization order failed to adequately identify the person to be intercepted was without substance.

The trial date was October 26, 1978. Following a waiver of jury, the court found defendant guilty on Count I. The defendant herein was sentenced to three years with a special parole term of two years.

The participation of Bremson in the drug distribution network started in January 1977 and continued until April 24, 1978. The government filed its application for an order authorizing the interception of wire communications on this latter date. In connection with this application, an extensive affidavit was filed by a special agent of the Drug Enforcement Administration, one Barbara J. Barclay. This undertook to present to the court all of the information known to the government concerning the people who used the Bremson telephones. This affidavit included facts about one Robert Diamos, who was later identified as Robert Diltz, appellant here. The Barbara Barclay affidavit purported to contain all of the facts concerning Diamos-Diltz within the government's knowledge.

The government brief represents, and the record shows, that at no time prior to the above-described application of the government was it aware of the existence of a Robert Diltz and thus there was no reason for naming him in the application. The brief goes on to say that it became feasible to name Diltz subsequent to the conclusion of the wiretap only because Diltz was identified after his arrest as the occupant of the residence where the telephone previously identified to Diamos was installed. The record is cited as showing that it did not become feasible to name Diltz in the indictment until the conclusion of the wiretap.

For purposes of defendant's trial to the court on charges in Count I of the indictment, willfully, knowingly and unlawfully conspiring to possess, with intent to distribute, a Schedule I, non-narcotic controlled substance, that is, marijuana, there was a stipulation of facts, a copy of which is appended hereto. Based on the facts stipulated, Diltz was found guilty by the court.

I.

DISCUSSION OF THE ISSUE

The sole issue presented is whether, under 18 U.S.C. § 2518(10)(a)(i), evidence obtained from a wiretap wherein the government failed to name the defendant in its application must be, in view of these facts, suppressed.

The defendant contends that the government had probable cause to believe that defendant Diltz was engaged in illegal activities within the coverage of 18 U.S.C. § 2518(1)(b)(iv).[1]

1. Section 2518(1) lays down strict requirements for the identification of persons with respect to whom probable cause exists that the particular person was engaged in illegal activity. The application must give the following:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

## II.

## WHETHER THE NAME CONFUSION (DIAMOS–DILTZ) EXCUSES THE GOVERNMENT FROM IDENTIFYING THE INDIVIDUAL AS A SURVEILLANCE TARGET IN ITS APPLICATION

■ The defendant contends that the government was required to identify Diltz or Diamos at the outset because it had reasonable cause to believe that he was engaged in illegal activity. The government maintains that it had no reason to believe that Diamos and Diltz, the defendant herein, were the same individual. They may have had some information at least that Diamos was engaged in illegal activities which were the subject of the investigation. There is no reason to believe that the government knew that Diamos was Diltz.

Defendant contends that the government had probable cause to believe that the defendant Diltz was engaged in an illegal activity within the purview of 18 U.S.C. § 2518(1)(b)(iv). A problem at the outset relates to the government's position that it was not aware at the times in question that Diltz and Diamos were the same man. The supporting papers referred to information concerning Diamos, but he was not named as a principal party whose telephone the agents proposed to monitor.

The initial question is then whether the fact that the government was confused as to the true name of Diltz has an effect on the need for identification in the application. Our conclusion is that this name variance did not of itself excuse the government's failure to identify Diltz by the use of the name Diamos which he was then using. If the government was obliged to identify Diamos in accordance with the statute, it will not suffice to say that the identity of Diamos was unknown. There can be little question but that if the government had identified Diamos by that name as a person who they had probable cause to believe was engaged in illegal activities, that would have sufficed as to Diltz once his real name was found out. Since, however, the government did not undertake to identify in accordance with the statute either Diltz or Diamos, we must move to the question whether there existed probable cause that this individual was engaged in illegal activity.

## III.

Appellant relies on *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). There the Supreme Court ruled that it was not sufficient to merely identify the principal target of the wiretap as the person whose telephone was proposed to be tapped; that the obligation to identify extends to a suspect placing calls to the target telephone as much as it does to a suspect placing calls from that telephone. The position of the Supreme Court in *Donovan* was that a wiretap application must name an individual if the government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the in-

* * * * * *
Subsection (c) deals with prior investigative procedures that have been tried and which have failed.

Subsection (d) provides for a statement of the length of time for which the interception is required to be maintained.

* * * * * *

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application.

Following presentation of the moving papers, § 2518(3) authorizes the entry of an ex parte order if the judge determines that

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

* * * * * *

18 U.S.C. § 2518.

dividual's conversation over the target telephone. The failure of the government to satisfy this requirement of the statute renders the order void and requires suppression of the testimony.

The factual basis for the appellant's argument in this case is that the supporting documents utilized by the government in order to obtain a court order authorizing the wiretap reveal that there was a certain activity involving Robert Diamos, whose true name now appears to be Robert Diltz, contained in the affidavit of Special Agent Barbara J. Barclay of the Drug Enforcement Administration. Those paragraphs of the Barclay affidavit which refer to Diamos are set forth below. This is offered by the government in support of its position on the merits that it did not have evidence from which it could be concluded that there existed probable cause that Diltz was engaged in illegal activity and that there was a probability that conversations supporting this conclusion would result from the eavesdropping.

The government also relies on *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), wherein the government applied for an extension of an order authorizing wiretap interception of gambling-related conversations of certain named individuals. The government did not identify the three defendants in the extension application notwithstanding that it had previously learned that they were discussing illegal gambling activities with the persons named in the original order. The Supreme Court, while recognizing that the identification requirement was important, said that failure to comply fully with the provision of that section did not render unlawful an intercept order that in all other respects satisfied the statutory requirements. We do not see this aspect of *Donovan* as being relevant.

It is well to next consider whether the facts relating to Diamos constituted probable cause. It is said that the 61-page affidavit of Barbara J. Barclay contained all of the information that was known to the government on the date of its filing concerning persons using the Bremson telephones.[2]

We must determine that the evidence dealing with Robert Diamos described in Agent Barclay's affidavit was inconsequential and inconclusive in establishing anything more than suspicions, whether the paragraphs are appraised individually or as a totality. For example, the fact that there

---

**2.** Paragraph 1 states that during November 1977, four telephone calls were exchanged between Bremson's telephone and a telephone subscribed to by one Robert Diamos.

Paragraph 2 states that an individual by the name of Robert Diamos was a suspect in an ongoing investigation of a multi-pound cocaine smuggling organization operating in California, Colorado, Kansas and Missouri, and that said name appeared on the telephone toll records of other persons under investigation by the Drug Enforcement Administration in other sections of the United States.

Paragraph 3 states that the same telephone number which had been called from the Bremson telephone during November 1977 was listed in the personal telephone book of an individual whose apartment was searched in November 1977 by officers of the Kansas City, Missouri Police Department. This search revealed a quantity of cocaine.

Paragraph 4 states that after the arrest and the search of a New York State fugitive identified as John Brefeld, which occurred on March 3, 1977, that said individual was found to be in possession of more than 1,000 pounds of marijuana, and that in certain record books also recovered there was listed a telephone number different from that which was involved in the calls to and from Bremson's residence in November 1977, which number was listed to a Robert Diamos, who resided at a different address than that which was listed to the telephone Mr. Bremson's calls involved.

Paragraph 5 states that a listing from one of the record book pages obtained from Charles D. Bremson's trash on February 13, 1978, contained a reference to a "Bob D . . . 4 Kilos, etc.," under the heading "Grese," meaning hashish oil.

Paragraph 6 states that during March 1978, eight telephone calls were exchanged between Bremson's telephone and the telephone subscribed to by one Robert Diamos residing at 136 West 61st Terrace, Kansas City, Missouri, the same number and address of the subscriber identified as Robert Diamos noted in paragraph 1 above.

Paragraph 7 declares that a truck which had been parked at Diamos' residence was also seen parked at Bremson's residence on a certain date.

were telephone calls made between Bremson and Diamos is in and of itself inconsequential. In the absence of a report of the content of the conversations, this does not rise above the level of suspicion. The fact that Diamos was the subject of an investigation by the government in several states and that his name appeared in telephone toll records of other persons who were being investigated by the Drug Enforcement Administration is also lacking in substance.

In paragraph 3, assuming that the reference is to Robert Diamos, whose number was listed in the personal telephone book of an individual whose apartment was searched in November 1977 by the Kansas City, Missouri police, who found a quantity of cocaine, is also highly inconsequential and unreliable. It would be a lead and would justify further investigation, but it could not be used as evidence in any judicial proceeding. It would be unworthy even in an ex parte procedure. The fact that there was an earlier discovery of a large quantity of marijuana in New York, and a record book which listed a telephone number different from that which Diamos had at the time here in question, which was listed in the name of Robert Diamos, does not substantiate anything, nor does the page from Bremson's record book showing a reference to "Bob D . . . 4 Kilos, etc.," under the heading "Grese" constitute evidence which could be used for any purpose except to feed the reader's suspicions.

The evidence that was offered to establish the guilt of Diltz is not to be confused with that which appeared in the Barclay statement. The evidence in the stipulation at trial was far more meaningful and extensive than that which was contained in the Barclay affidavit.

## IV.

## DOES THE EVIDENCE PRESENTED CONSTITUTE PROBABLE CAUSE?

What is meant by probable cause? This is discussed in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In that opinion by Mr. Justice Rut-

ledge it was emphasized that the name implies probabilities. The Court said:

In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

"The substance of all the definitions" of probable cause "is a reasonable ground for belief of guilt." *McCarthy v. De Armit*, 99 Pa.St. 63, 69, quoted with approval in the *Carroll* opinion. 267 U.S. at 161 [45 S.Ct. at 288, 69 L.Ed. 543]. And this "means less than evidence which would justify condemnation" or conviction, as Marshall, C. J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch. 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. *Carroll v. United States*, 267 U.S. 132, 162 [45 S.Ct. 280, 288, 69 L.Ed. 543]. 338 U.S. at 175–176, 69 S.Ct. at 1310–1311.

The test which is set forth in *Brinegar*, requiring that the facts and circumstances within the officer's knowledge based on reasonably trustworthy information be sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed, is the accepted definition. Sometimes it is said that it is a reasonable ground for belief of guilt, although less than evidence to justify conviction. The early case of *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), which is cited in *Brinegar*, makes clear that the evidence must rise above mere suspicion.

■ Although hearsay evidence can be legally sufficient as the basis for existence

of probable cause, it must be information that is cogent and probative.

■ This court, in an opinion by Judge McWilliams, has made an evaluation of probable cause similar to the present one in a case in which the evidence was hearsay. This was in *United States v. Russo*, 527 F.2d 1051 (10th Cir. 1975). Russo was a lawyer who, with some clients, became involved in a prostitution ring in Kansas City, Kansas. An aspect of the enterprise was payment of bribes to police officers. Following investigation, an application was filed which sought authorization to intercept wire and oral communications to the telephones located in a massage parlor. The target was William M. Lowman. Russo, the attorney, was not named as a target. This court considered whether the evidence presented provided the requisite probable cause for treating Russo as a principal along with Lowman. *United States v. Donovan, supra* had not at the time been decided by the Supreme Court and thus the guidelines were less clear than at present. The ultimate holding was that probable cause did not exist whereby Russo should have been included as a principal and as a target. As it was, his name appeared in the papers only. The opinion emphasized that the evidence linking Russo to the conspiracy was non-probative hearsay.

The trial court was quoted as having said:

> [W]hile the defendant Russo was a person "known", at least by hearsay information, to be committing the offense, it was not necessary that his name be specified in the order as one whose communications were to be intercepted as he was not shown to be the owner of, or a person likely to be using the particular telephone to which the wire tap was to be attached,
>
> . . .

527 F.2d at 1056. The trial court's position was approved by this court:

> We are of the further view that the Government at that point in time did not even have probable cause to believe that Russo was committing the particular offense in connection with which the tap was sought.

527 F.2d at 1056. Attention was called to the fact that any belief that Russo was directly involved "was necessarily based on pure hearsay." The opinion does acknowledge that hearsay can be the basis of probable cause; this particular hearsay was, however, determined to be insufficient.

A collection of the several probable cause evaluation cases is contained in 8A Moore's Federal Practice, Rules of Criminal Procedure, Cipes Edition, starting at ¶ 41.04. The author endorses the definition given by *Brinegar* that "Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed."

The Supreme Court in *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), considered that an arrest without a warrant together with search incident thereto, was based on information which had been given to a narcotic agent by a special employee. Thus, the arrest there was grounded on hearsay. Nevertheless, it was upheld on the reasoning that the special employee was shown to have been reliable.

The subsequent decision in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), recognized that hearsay contained in an affidavit could be the basis for probable cause. Rule 41 is in accordance with the *Jones* case.

In *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the Supreme Court invalidated a warrantless search basically on the ground that an informant who had said that Toy had sold him heroin had never given any information to the agents previously and thus was not reliable. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), set aside a search warrant where the application for the warrant referred to "reliable information" received from "a credible person." So, in *Aguilar*, wherein the search warrant

was based upon an informant's tip, the Supreme Court did not disapprove of hearsay evidence. It disapproved of hearsay conclusions and required that there be underlying circumstances from which the informant obtained his information together with a detailed showing of the circumstances which gave rise to the conclusion that the informant was reliable. The purpose was not only to bring out the facts but to demonstrate that the information was reliable and that the informant was credible.

One of the results which emerges from the Supreme Court decisions is that conclusory indications are of little value in ascertaining the existence of probable cause. What is needed are facts that speak out as to the existence of probable cause. Whether the evidence is hearsay is not significant, but if it is hearsay, it should be factual, relevant and also trustworthy. The information which the government asserts as the sum total of the facts with respect to the activities of the defendant here, whether you call him Diltz or Diamos, merely refers to a variety of disconnected facts growing out of disjointed and different transactions. In this variety of conclusory facts, no single one is sufficient to provide an agent with anything more than suspicion. Connecting these facts does not add to their probative value. It is this result which leads us to conclude that it was not necessary for the government to identify Diamos or Diltz in order to comply with the statute. Section 2518(1)(b) calls for a full and complete statement of the facts and circumstances relied upon by the applicant to justify his belief that an order should be issued, together with details as to the particular offense that has been, is being, or is about to be committed.

Although we conclude that the name variance does not excuse the government's failure to identify Diltz by use of the name Diamos which he was then using, we also conclude that the government was not required to identify either in its application.

The statements in the Barclay affidavit speak for themselves. The lack of substance is apparent from the face of the information furnished. It was conclusory, it was inconsequential, it was disjointed and it, in and of itself, was insufficient to constitute probable cause for identifying Diltz or Diamos as the object or target.

The judgment of the district court is affirmed.

### APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No. 78-20072-05 |
| | ) | |
| | ) | |
| ROBERT DILTZ, | ) | |
| a/k/a Robert Diamos | ) | |
| | ) | |

### STIPULATION OF FACTS IN EVIDENCE

Comes now the United States of America, by and through Douglas B. Comer, Assistant U. S. Attorney for the District of Kansas, and the defendant Robert Diltz, appearing in person and by counsel Randy Austin, and would enter into the following stipulation as to facts which would be and are hereby submitted into evidence for purposes of defendant's trial to the Court upon the charges contained in Count One of the indictment now pending in this case:

The facts stipulated by the parties are as follows:

1. That Charles D. Bremson, Jr. did, between the period from approximately January 1977 up to and including May 13, 1978, organize and maintain a drug distribution network, the purpose of which was to distribute certain quantities of Marijuana, Hashish, and Hashish Oil, which are Schedule I, non-narcotic controlled substances under the provisions of 21 U.S.C. § 841(a)(1); and which drug substances Charles Bremson and other defendants in this case identified below purchased for that purpose during the same period of time.

2. That extensive intelligence investigation conducted by special agents of the

United States Department of Justice Drug Enforcement Administration documented the existence of Charles D. Bremson, Jr.'s drug distribution network during the period of time from January, 1977 up to April 24, 1978. Facts indicating the existence of Bremson's distribution network which the Government would introduce into evidence are incorporated into the "Application for Order Authorizing the Interception of Wire Communications" and the Affidavit accompanying said application, which were submitted to the United States District Court for the Western District of Missouri on April 24, 1978; and which application and affidavit are attached hereto as Exhibit "1", and incorporated in this statement of evidence by this reference. The statement of facts contained in said exhibits are hereby stipulated to by the parties.

3. That, based upon the facts contained and set forth in Government's Exhibit "1" attached hereto, an order was entered by the United States District Court for the Western District of Missouri authorizing interception of wire communications of Charles D. Bremson, Jr. on April 24, 1978. Said order is attached hereto as Government's Exhibit "2" and is incorporated herein by this reference.

4. That, pursuant to the order entered identified as Government's Exhibit "2", a wiretap was attached to the telephones installed at the residence of Charles D. Bremson, Jr., located at 722 W. 49th Terr., in Kansas City, Missouri, on April 24, 1978, which wiretap was terminated in accordance with the order on May 13, 1978.

5. That, during the period of time wherein the wiretap identified above was in operation, certain conversations pertaining to the procurement and distribution of varying quantities of Marijuana, Hashish, and Hashish Oil were intercepted; and that these telephonic communications were conducted between Charles D. Bremson, Jr. and the following individuals:

James Barosh

Gary Bressman

Donald Conrad

Robert Diltz, a/k/a Robert Diamos

James Frantze

Mark Greer

Steve Irwin

Donald Kelly

Scott Lane

Larry D. Russell

Steve Stowe

Robert Wilkerson

Steve Wochner

Susan Bockelman, a/k/a Susan Bremson all of whom are co-defendants of the defendant Robert Diltz in this case. The Government would introduce the transcripts of the telephonic communications between Charles D. Bremson, Jr. and the above-named individuals as evidence of the conversations which were in fact intercepted and which were drug related. Said transcripts are attached hereto as Government's Exhibit "3–1" through "3–77", and are incorporated in this statement of evidence by this reference, and their accuracy is stipulated to by the parties.

6. The parties further stipulate that each of these transcripts, identified as Government's Exhibit "3–1" through "3–77", are in fact true and accurate transcripts of conversations aurally monitored by agents of the Drug Enforcement Administration, and that the parties involved in the various communications are in fact those parties who are identified on the face of the transcripts thereof.

7. The parties stipulate that on April 24, 1978, defendants Charles D. Bremson, Jr. and James Barosh discussed, in various telephone conversations, the purchase and transfer of approximately three hundred pounds of marijuana, which marijuana was being sent to Bremson's residence at 722 W. 49th Terr., in Kansas City, Missouri, from Florida by Barosh via automobiles driven by co-defendants Robert Wilkerson and Steve Stowe. Transcripts of said conversations are attached hereto as Government Exhibits "3–1" through "3–13", and incorporated herein by this reference.

8. It is stipulated that on April 24, 1978, Charles D. Bremson, Jr. and Robert Diltz had a telephone conversation wherein they

discussed the quality, quantity and purchase price of the marijuana that Bremson was going to receive from Barosh, and what portion of that shipment would be given to Diltz. A transcript of said conversation is attached hereto as Exhibit 3–14, and incorporated herein by this reference.

9. It is stipulated that on April 25, 1978, Charles D. Bremson, Jr. and Robert Wilkerson had a telephone conversation wherein Wilkerson informed Bremson that he had arrived in the Kansas City, Missouri area and would proceed to Bremson's residence. (Government Exhibit 3–5).

10. It is stipulated that on April 25, 1978, at approximately 8:30 p. m. Robert Wilkerson arrived at Bremson's residence in Kansas City, Missouri, driving a 1975, blue in color, four-door Mercury automobile and that on April 26, 1978, Steve Stowe arrived at Bremson's residence driving a maroon Chrysler automobile.

11. It is stipulated that on April 26, 1978, Charles D. Bremson, Jr. and Robert Diltz, a/k/a Robert Diamos, discussed, in a telephone conversation, the transfer of a quantity, approximately 150 pounds, of marijuana from the residence of Bremson to the residence of Diltz located at 136 W. 61st Street, in Kansas City, Missouri. On the same date, Bremson traveled from his residence to the residence of Diltz in the maroon Chrysler identified in Paragraph 10 above for the purpose of delivering the marijuana to Diltz, and was observed to unload from his automobile, with the help of Diltz, and place inside Diltz's residence, several large duffell bags which were of the same size, shape and color as a duffell bag recovered in a federal search from a storage locker rented by Charles D. Bremson, Jr. located at 3150 South 44th Street, in Merriam, Kansas, on May 13, 1978. It is stipulated that the duffell bag so recovered was found upon inspection by officers of the Drug Enforcement Administration to contain marijuana residue. Transcripts of the conversations between defendant Bremson and defendant Diltz concerning the transfer of the marijuana from Bremson to Diltz on

April 26, 1978, are attached hereto and incorporated herein as Exhibits "3–14" through "3–20".

12. It is stipulated that on May 2, 1978, Charles D. Bremson, Jr. and Robert Diltz telephonically discussed monies owed by Diltz to Bremson for drug substances that he had received. During said conversation, Diltz indicated to Bremson that he would attempt to collect, and remit to Bremson, approximately $20,000.00 that Diltz owed to Bremson for previous drug transactions between the two which involved the purchase by Diltz, from Bremson, of various quantities of marijuana and hashish. A transcript of said conversation is attached hereto as Exhibit 3–49, and incorporated herein by this reference.

13. It is stipulated that, on May 13, 1978, defendant Charles D. Bremson, Jr. was arrested while he was removing items from a storage locker which he had rented located at 3150 South 44th Street, in Merriam, Kansas. It is stipulated that a federally authorized search warrant was executed on that date upon the storage locker leased by Bremson, and it was found to contain the following: approximately 150 pounds of marijuana and hashish and approximately 2,000 milliliters of hashish oil, which were in fact Schedule I, non-narcotic controlled substances under the provisions of 21 U.S.C. § 841(a)(1) and other sections of Title 21, United States Code, and which had an approximate retail value of $750,-000.00.

14. Finally, the parties would stipulate that the defendant Charles D. Bremson, Jr. pled guilty, on October 18, 1978, to Count One of the indictment in this case, alleging a conspiracy to distribute marijuana, hashish and hashish oil in violation of 21 U.S.C. § 846, and to Count III of the indictment, alleging that defendant Bremson did distribute a quantity of marijuana to Robert Diltz on April 26, 1978, in violation of 21 U.S.C. § 841(a)(1). The parties stipulate that pursuant to said plea, defendant Bremson stated to the Court that he had, in fact, transferred a quantity of marijuana to Rob-

ert Diltz on April 26, 1978, and that he did conspire with defendant Diltz to distribute marijuana during the period of the indictment as alleged in Count I thereof; and that he would so testify if called upon to do so. Therefore, the parties stipulate that his testimony as stated above may be considered by this court for the purpose of this trial.

Statement of Stipulation and Waiver of Constitutional Right to Trial by Jury

1. The defendant Robert Diltz, defendant's counsel Randy Austin, and the United States hereby stipulate that the above facts, including exhibits attached hereto, shall be and are hereby admitted into and shall be considered as, evidence for consideration by this Court pursuant to the trial of this action against defendant Diltz before this Court. All objections to the admissibility of these facts into evidence are hereby waived by the defendant and his counsel.

2. The defendant Robert Diltz hereby expressly waives his Constitutional rights to trial by a jury of his peers as provided in the 6th Amendment to the United States Constitution, and consents to trial of this case by and to the United States District Court for the District of Kansas. The defendant further stipulates that the findings entered by this Court upon the evidence contained in this stipulation of evidentiary facts as to his guilt or innocence shall be accepted as the final adjudication of his guilt or innocence, the same as if there had been a trial to, and verdict rendered by, a jury; however, the defendant expressly reserves his rights under the statutes of the United States to appeal any judgment so entered by this Court.

ROBERT DILTZ
Defendant
RANDY AUSTIN
Counsel for Defendant
DOUGLAS B. COMER
Assistant U. S. Attorney
District of Kansas for and on
behalf of the United States of America.

Approved by the court on this 26th day of October 1978 pursuant to Rule 23(a) of the F. R. Cr. P.

Earl E. O'Connor
U. S. District Judge.