**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Corky NUNEZ, Defendant–Appellant.**

**No. 87–1976.**

United States Court of Appeals,
Tenth Circuit.

June 20, 1989.

Frances Smylie Brown, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellant.

William D. Welch and Kathryn Meyer, Asst. U.S. Attys. (Michael J. Norton, Acting United States Attorney, D. Colo., with them on the brief), Mountain States Drug Task Force, Denver, Colo., for plaintiff-appellee.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN, District Judge.*

McWILLIAMS, Circuit Judge.

In a thirty-three count superseding indictment, Corky Nunez and nineteen other defendants were charged with various drug offenses. Specifically, all defendants were charged in Count 1 with conspiring among themselves, and with others, from June, 1984, to June 11, 1986, to distribute heroin and to possess heroin with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1). In Count 7 Corky Nunez and his brother, Charles Nunez, were charged with using the telephone on May 26, 1985, to facilitate the possession and distribution of heroin, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. In Count 26 Corky Nunez and another brother, Antonio "Pic" Nunez, were charged with using the telephone on June 9, 1985, to facilitate the possession and distribution of heroin, in

* Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

violation of 21 U.S.C. § 843(b) and 18 U.S. C. § 2.

Corky Nunez was convicted by a jury on Counts 1 and 26, but acquitted on Count 7. He was sentenced to twelve years imprisonment on the conspiracy charge, the sentence to commence when he had completed a state sentence he was then serving. He was also sentenced to four years imprisonment on Count 26, to be served concurrently with the twelve-year sentence imposed under Count 1. Corky Nunez appeals his convictions and the sentences imposed thereon.

Prior to trial, Corky Nunez, as well as other defendants, filed motions to suppress the evidence resulting from the wiretap of Antonio "Pic" Nunez' phone. After a hearing, the district court denied Corky Nunez' motion to suppress, 658 F.Supp. 828 (1987), and, on appeal, counsel argues that such denial constitutes reversible error. We do not agree.

In a 104–page affidavit jointly made by a police officer for the City and County of Denver and an agent for the Drug Enforcement Administration, a request was made for an order authorizing a wiretap on the home telephone of Antonio "Pic" Nunez in Westminster, Colorado. The affidavit set forth the reasons and the necessity for such request. The district court entered an order granting that request and the home telephone of "Pic" Nunez was tapped from May 20, 1985, to June 18, 1985, resulting in 3,736 intercepts.

As indicated, prior to trial, the district court held an evidentiary hearing on "Corky" Nunez' motion to suppress and denied the same. The district court rejected the suggestion that there was no "probable cause" to tap "Pic" Nunez' phone and that such tapping was "unnecessary." Also, the district court rejected the further suggestion that the district judge who issued the wiretap order had not read the affidavit when he issued the order.

A wiretap authorization order is presumed proper, and defendants have the burden of overcoming that presumption. *United States v. Newman*, 733 F.2d 1395, 1398 (10th Cir.1984). Probable cause is established from the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The "necessity" requirement of 18 U.S.C. § 2518 should be read in a common sense fashion, *United States v. Kirk*, 534 F.2d 1262, 1274 (8th Cir.1976), and it is not necessary that every other possible means of investigation be exhausted. *United States v. Page*, 808 F.2d 723, 729 (10th Cir.1987); *United States v. Newman*, 733 F.2d 1395, 1399 (10th Cir.1984).

Based on these standards, the wiretap authorization was proper. Our reading of the lengthy affidavit submitted to the district judge convinces us that there was probable cause for the tapping of "Pic" Nunez' home phone. The recitals in the affidavit indicated, and strongly so, that "Pic" Nunez was the head of a large-scale heroin distribution ring in Colorado.[1] Further, the affidavits also established, *prima facie*, that there was a need for the wiretap. Specifically, other investigative techniques had already been utilized and there was still a need for more information regarding the scope of the conspiracy. The suggestion that the district judge who entered the order authorizing the wiretap had not read the affidavit before entering the order is just that—a suggestion. The suggestion is based on the fact that a notation was made on the order that it was issued on May 20, 1985, at 8:25 a.m., and that a notation on the affidavit indicates that it was sworn to by the affiants on that same date at 8:30 a.m. The record, however, indicates that the government advised the district judge who heard the motion to suppress that, because of the length of the affidavit, a copy was given the judge who

---

**1.** It should be noted that the government had no duty to establish probable cause as to each interceptee. It is sufficient that there was probable cause to tap the phone. *United States v. Figuero*, 757 F.2d 466, 470–71 (2d Cir.1985), *cert. denied*, 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985); *see e.g., United States v. Diltz*, 622 F.2d 476, 482–83 (10th Cir.1980); *United States v. Russo*, 527 F.2d 1051, 1056 (10th Cir.1975), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 831 (1976), *reh. denied*, 427 U.S. 913, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976).

issued the order several days prior to May 20, 1985. The district judge accepted the government's explanation for what might otherwise appear to be an anomaly.[2] The time notations, standing alone, are insufficient to overcome the presumption of regularity. It seems clear to us that defendants have failed to meet their burden of proof, and that the wiretap authorization was proper.

Corky Nunez, as well as Blackie Nunez and Anna Irene Martinez, assert that Count 1 charged a single conspiracy, but that the evidence showed two conspiracies, one involving the distribution of heroin at the state penitentiary, where Corky and Blackie Nunez were inmates, and another conspiracy to distribute heroin in the Metropolitan Denver area. Thus, Corky Nunez argues that he should have been granted a separate trial, and, further, since there was a variance between the charge and proof, his conviction under Count 1 should not be permitted to stand.

The government's position is that the indictment charged only a single conspiracy, and that indeed a single conspiracy is what its evidence established. Although the conspiracy involved many actors, great quantities of heroin emanating from a common source, and numerous distributions, all participants shared a common goal: namely, to possess and distribute heroin for profit.

We are in accord with the government's view of its evidence. "Pic" Nunez was the central figure or "hub" in this operation. He acquired the heroin in California, brought it to his residence or his nearby place of business in Westminster, Colorado, cut it, packaged it, and then distributed it to his "dealers," who in turn sold it to others. The mere fact that two of his "dealers," Corky and Blackie, were prison inmates, does not insulate them from the general overall conspiracy. Similarly, the mere fact that Martinez, another defendant-appellant, was not in prison does not insuate her from the prison "spoke" of the conspiracy. *See* the companion opinion, *Martinez v. United States*, 877 F.2d 1480. The present facts are quite similar to those in such cases as *United States v. Dickey*, 736 F.2d 571 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985); *United States v. Watson*, 594 F.2d 1330 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); and *United States v. Heath*, 580 F.2d 1011 (10th Cir.1978), *cert. denied, Babb v. United States*, 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979), where in each instance we rejected the argument that there were multiple conspiracies rather than a single conspiracy. For example, in *Watson* we spoke as follows:

> We have discussed the evidence in detail earlier. It suffices to note here that it demonstrated that Anderson supplied drugs from California to Thompson, the Tulsa wholesaler, who distributed them to various street dealers, including these three appellants. From evidence of the volume and nature of their operations, an inference may be drawn of awareness by appellants of the scope of the narcotics conspiracy.
>
> Where large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know. *United States v. Heath*, 580 F.2d 1011, 1022 (10th Cir.1978). We are satisfied that the evidence here shows a common design to acquire and distribute heroin and cocaine, id. at 1022, and that it was permissible to link the appellants with Thompson and Anderson. Whether the evidence was sufficient to establish the single conspiracy charge was a question for the jury. (Footnote omitted.)

2. Judge Kane adequately discussed each of these issues in his order on pending motions. He noted that the defendant has the burden of overcoming the presumed validity of the wiretap authorization, relying on *United States v. Newman*, 733 F.2d 1395, 1398 (10th Cir.1984).

He then noted that "the time notations on the order (8:25 a.m.) and on the affidavit (8:30 a.m.) are inconclusive *by themselves*" to overcome this presumption, particularly since Judge Finesilver specifically found that probable cause existed. We agree.

The facts in these cases are indistinguishable from the facts in our case. Thus, we affirm the holding that there was a single conspiracy, not two separate conspiracies as the defendants contend.

█ As indicated in our opinion in the Blackie Nunez appeal, *United States v. Juan "Blackie" Nunez,* 877 F.2d 1475, Blackie was eventually banished from the courtroom because of his disruptive conduct. Counsel for Corky Nunez twice moved for a mistrial based on Blackie's misconduct. Both motions were denied. Corky's appellate counsel asserts that such denial is reversible error, arguing that since Blackie was his brother, he was more severely prejudiced than the other defendants. We are not persuaded. The district court has discretion in this situation, *United States v. Pinto,* 838 F.2d 426, 434 (10th Cir.1988); *United States v. Esch,* 832 F.2d 531, 537 (10th Cir.1987), and we find no abuse of that discretion. The district court did instruct the jury that the absence of Blackie from the courtroom should not affect the trial of the other defendants and the jury acquitted the appealing defendants on several counts and completely exonerated other defendants. This tends to indicate that Corky's rights were adequately protected. *United States v. Evans,* 542 F.2d 805, 815 (10th Cir.1976). If Blackie's misconduct required his banishment and a mistrial of the other defendants, Blackie would have obtained the ultimate in courtroom disruption. Such a result could make a mockery of every conspiracy trial.

█ Counsel also contends that there is insufficient evidence to support Corky's conviction on either the conspiracy count or the count charging an unlawful use of the telephone. Our study of the record leads to a contrary conclusion. The evidence must be examined in the light most favorable to the government, together with all reasonable inferences to be drawn therefrom. *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.1986). There was evidence that Corky's wife, a co-defendant, delivered heroin obtained from "Pic" Nunez to Corky at the state penitentiary, and that "Pic" Nunez had himself on occasion delivered heroin to Corky at the prison. The evidence concerning the telephone call was that on June 9, 1985, Corky called "Pic" from the state penitentiary and was advised that Blackie's daughter was coming to the penitentiary and bringing heroin for them to distribute at the penitentiary. More specifically, Corky called "Pic" and was told that "Cha-Cha," Blackie's daughter, Charlettie Lee, was coming to the state penitentiary to see Blackie and was bringing two "boo-boos," which, according to other testimony, meant two balloons of heroin. Without further elaboration, there is, in our view, sufficient evidence to support the government's theory of the case that Corky Nunez on more than one occasion received heroin obtained from "Pic" and brought to him by relatives making prison visitations, and that Corky made a call from the prison to "Pic's" telephone in Westminster and, in guarded language, inquired about deliveries and payments. The instructions regarding the unlawful use of the telephone on June 9, 1985 (Count 26) by Corky are adequate in that they advised the jury of the statutory elements for and definitions of the unlawful use of a communications facility to facilitate a drug offense.[3] *See United States v. Burns,* 624 F.2d 95, 105 (10th Cir.1980).

Judgment affirmed.

McKAY, Circuit Judge, dissenting in part:

I must dissent from that portion of the court's opinion that depends on its conclusion that there was sufficient evidence to prove a single conspiracy. In addition to the reasons set out in my dissents in *United States v. Heath,* 580 F.2d 1011 (1978); *United States v. Watson,* 594 F.2d 1330 (1979); and *United States v. Dickey,* 736

---

**3.** Certain objections to the jury instructions made in this court were not urged in the trial court. Fed.R.Crim.P. 30 provides that an appellate court will not hear objections to jury instructions on appeal unless the objecting party preserves the matter for appeal by "stating distinctly [in the trial court] the matter to which that party objects and the grounds of the objection."

F.2d 571 (1984), I must add my observation that when it comes to the evidence showing the rim that connects the spokes (*Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); and *United States v. Butler*, 494 F.2d 1246 (10th Cir. 1974)), in my view we are not faithfully applying the mandate of *Anderson v. Liberty Lobby*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), to view the evidence "through the prism of the substantive evidentiary burden."