**UNITED STATES of America,
Plaintiff,**

**v.**

**Jesus Ramon HERNANDEZ–SENDE-JAS, Arcenio Soto Meza, Trung V. Le, James L. Black, Michael B. Williams, Defendants.**

Nos. 02–10117–01–WEB, 02–01117–02–WEB, 02–10117–09–WEB, 02–10117–10–WEB, 02–10117–11–WEB.

United States District Court,
D. Kansas.

June 19, 2003.

---

Mona L. Furst, Office of United States Attorney, Wichita, KS, for Plaintiff.

Douglas L. Adams, Jr., Ney, Adams & Sylvester, Wichita, KS, Jeff L. Griffith, Griffith & Griffith, Derby, KS, Mark T. Schoenhofer, Schoenhofer & Scott, Mark A. Sevart, Wichita, KS, for Defendants.

1. Defendants Meza and Williams have joined in the motions filed by defendant Hernandez–

**MEMORANDUM AND ORDER**

WESLEY E. BROWN, Senior District Judge.

This matter came before the court on May 27, 2003, for a hearing on the pending motions filed by the above-named defendants. The court ruled orally on the motions at the May 27th hearing. This written memorandum will supplement the court's oral ruling.

1. *Motions to Suppress Wiretap Evidence.*

In the course of its investigation in this case, the Government prepared and submitted applications for four separate wiretaps and several extensions. The applications were approved by a federal judge, and in the ensuing six-month period in which the Government was authorized to intercept communications it intercepted some 9,000 calls, including some allegedly involving the above-named defendants. Defendants Hernandez–Sendejas and Le have each filed a motion to suppress the Government's wiretap evidence. (Docs.209, 203).[1] In brief, Hernandez argues that the Government failed to satisfy the "necessity" requirement of 18 U.S.C. § 2518 with respect to the wiretaps. He contends that in each successive application the Government simply "cut and pasted" from earlier affidavits and provided little or no additional detail to explain why other investigative techniques had been, or would be, unsuccessful. Defendant Le argues this ground as well, and additionally argues there was no probable cause for a warrant because the Government failed to cite evidence of any connection between himself and the "Lee," "Chung Lee" or "Jeff Lee" mentioned in the Government

Sendejas. *See Docs. 205, 218.*

affidavits. He further contends the Government failed to terminate the wiretaps once their objective had been reached and failed to "minimize" them by restricting intercepted communications to criminal matters. *See* 18 U.S.C. § 2518(5).

■ Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510–22, sets forth an application procedure for federal investigators seeking permission to wiretap criminals suspects. *United States v. Castillo–Garcia*, 117 F.3d 1179, 1184 (10th Cir.)[2], *cert. denied*, 522 U.S. 962, 118 S.Ct. 395, 139 L.Ed.2d 309 (1997) and 522 U.S. 974, 118 S.Ct. 428, 139 L.Ed.2d 328 (1997). Agents must first obtain approval from the Attorney General or a specially designated Assistant Attorney General. *Id.* at 1184–85. Then, a judge of competent jurisdiction must approve an application submitted by investigators. *Id.* at 1185. Judges may only authorize wiretaps where certain statutory requirements are met, including a showing by the Government that the wire tap is necessary to investigate a serious offense enumerated on a statutory list. *Id.;* 18 U.S.C. § 2516. Upon an appropriate application the judge may enter an order authorizing t he wiretap if the judge determines that the prerequisites listed in § 2518(3) are met. This procedure was followed with respect to each of the wiretaps and extensions at issue in this case.

■ In order to prove that a wiretap is "necessary," the Government must show that traditional investigative techniques have been tried unsuccessfully, reasonably appear to be unsuccessful if tried, or are too dangerous to attempt. 18 U.S.C. §§ 2518(1)(c) & (3)(c). *See also United States v. Ramirez–Encarnacion*, 291 F.3d 1219,1222 (10th Cir.2002). If any of these

traditional investigative techniques has not been tried, the Government must explain why with particularity. *United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001). Traditional techniques are defined as: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4)infiltration of conspiratorial groups by undercover agents or informants. *United States v.VanMeter*, 278 F.3d 1156, 1163–64 (10th Cir.2002) (*quoting Castillo–Garcia*, 117F.3d at 1187). Pen registers and trap and trace devices are also included in the range of traditional techniques. *Castillo–Garcia*, 117 F.3d at 1187–88. The necessity requirement is designed to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. *United States v.Edwards*, 69 F.3d 419, 429 (10th Cir.1995).

■ A defendant bears the burden of proving that a wiretap is invalid once it has been authorized. *Ramirez–Encarnacion*, 291 F.3d at 1222 (*citing United States v. Quintana*, 70 F.3d 1167, 1169 (10th Cir. 1995).) The court must consider all the facts and circumstances to determine whether the government's showing of necessity is sufficient to justify a wiretap, and must read the necessity requirement in a common sense fashion. *United States v. Nunez*, 877 F.2d 1470,1472 (10th Cir. 1989). A successful challenge to the necessity of a wiretap results in the suppression of evidence seized pursuant to that wiretap. *United States v. Green*, 175 F.3d 822, 828 (10th Cir.1999).

---

2. Overruled on other grounds by *United States v. Ramirez–Encarnacion*, 291 F.3d 1219 (10th Cir.2002).)

 The court finds the defendants have failed to meet their burden of showing that the wiretaps are invalid. The defendants have cited few specifics to support their allegation that the applications were deficient. After reviewing the relevant documents, the court concludes that the applications and supporting affidavits adequately explained why traditional methods of investigation were inadequate and why wiretaps were necessary. Special Agent Graham of the DEA discussed in his affidavits the traditional methods of investigation used by the Government and why the Government believed other traditional methods would not work or would be too dangerous. Among other things, the Agent thoroughly described how physical surveillance had been used where it was possible to do so. He explained that this method was of limited utility for various reasons, including the fact that several of the targets of the investigation had multiple residences and were located in neighborhoods where surveillance was likely to be detected. *See e.g.,* Govt. Attach. A, Affidavit of May 30, 2001, at p. 36–37. He noted the Government had used surveillance to follow individuals to suspected drug meetings, but this method could not yield sufficient information concerning the identity of the subjects and their intended actions. Agent Graham also explained about the Government's extensive attempts to use confidential sources and noted that six separate sources (as of the first application) had been developed in connection with the investigation. Although this method met with some success, the confidential sources were kept in the dark about critical details of the alleged conspiracy, including the sources of supply, the methods of importation, storage locations, and disposition of proceeds. *See Id.* at 38–39. The access and knowledge of these sources was also limited with respect to other members of the alleged conspiracy and the activities taking place in other locations. *Id.* Additionally, the Government was unable to obtain confidential sources in the upper echelons of the organization and was unlikely to be able to do so given the nature of the organization. *Id.* at 39. Agent Graham's affidavit explained why arresting and interviewing some of the lower-level individuals in the scheme would likely hamper the overall investigation and would have made apprehension and conviction of the leaders less likely. This was a significant concern given the unusually widespread nature of the organization and the possibility that many of the individuals involved would flee to Mexico if they learned of the investigation. *Id.* at 40–41. The Government also explained that use of search warrants would not be sufficient because the search of one or two locations would tip off members of the conspiracy in other locations and because the probable cause necessary to search any particular location could not be established without the aid of wiretaps. The Government explained about its extensive use of pen registers and telephone records and the information obtained from these methods, as well as the limitations on such methods and the need for wiretaps to identify the persons involved in particular calls and the substance of their conversations. *Id.* at 43. The affidavits alleged that the drug conspiracy was operated in large part through the use of cellular phones, and that it would be practically impossible to identify the various members and their methods of operation without using wiretaps. In addition to all of the foregoing, the Agent's affidavits specifically addressed various other methods—some of which were tried and some of which were not—and the various prospects of success for each method, including the use of grand juries and granting immunity, the use of undercover agents, electronic tracking devices, roving interceptors, and garbage seizures. The Government rationally

explained why these methods were unlikely to succeed, and court sees nothing to suggest the Government's assertion of the necessity for wiretaps was unfounded or inadequate. *Cf. United States v. Castillo-Garcia*, 117 F.3d 1179, 1187 (10th Cir.1997) (the necessity requirement is not an exhaustion requirement). On the contrary, the Government established that wiretaps were the only available technique with a reasonable likelihood of success in obtaining evidence of the entire alleged organization.

 The court also rejects defendant Hernandez' assertion that the Government made an inadequate showing with respect to the successive wiretaps and extensions. Although defendant is correct that the Tenth Circuit has warned against "mov[ing] swiftly from wiretap to wiretap," the Government is not necessarily under an obligation to repeat each form of investigation between each wiretap. Rather, under Title III the Government "must always 'paus[e] to consider whether normal investigative procedures could be used effectively, particularly in light of any evidence obtained as a result of each succeeding wiretap.'" *United States v. Castillo-Garcia*, 117 F.3d 1179, 1196 (10th Cir. 1997). The defendants' assertion that the Government failed to do that here is unfounded. It is true that the Government included in each application a great deal of information from prior applications, but there is nothing improper in that fact. Each succeeding affidavit was updated with information gathered in the ongoing investigation, and the updated information served to bolster the Government's claim that normal methods of investigation were not adequate. *See e.g.* Govt. Exh. A, Extension Affidavit at p. 25 (noting that unidentified passers-by asked agents conducting surveillance if they were detectives and accused them of watching the "Mexicans down the street.");Govt. Exh. B, Affidavit at p. 28 & 38 (recounting updated information on confidential sources and potential surveillance and search of stash houses, but noting that such methods were still not feasible). There is clear evidence in the affidavits that the Government "paused to consider" whether normal investigative methods would work as it proceeded with successive applications. As the Government points out, it sought successive applications primarily in an attempt to move "up the line" and to gather information on the leaders of the alleged organization. The defendants cite nothing to discredit the Government's explanation as to why normal investigative methods were unlikely to succeed in gathering such evidence. *Cf. United States v. Garcia*, 232 F.3d 1309, 1315 (10th Cir.2000) ("Even though many of the same facts were previously offered in support of the [prior] wiretap, it is apparent that the nature of the investigation had not substantially changed in the intervening time period.").

 Defendant Le's suggestion that the wiretaps are invalid because they failed to fully identify him or to mention the name "Trung Le" is without merit.[3] Defendant cites no authority for his argument that the Government's failure to fully and positively identify him in the applications renders the wiretaps defective. *Cf. United States v. Kahn*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225, (1974) (noting that § 2518(4)(a) only requires that the

---

**3.** The Government's first affidavit described information from a confidential source concerning the alleged involvement in drug trafficking of an Asian male known only as "Lee" whose wife, Lucy, owned a hair salon. Govt. Exh. A. Subsequent affidavits added more information as it became available and described the individual in question as "Chung V. Le, a.k.a 'Katan' a.k.a. 'Lee' a.k.a. 'Jeff T. Le.'" *See Govt. Exh. A, Extension Affidavit at p. 22–24.*

order specify "the identity of the person, *if known*, whose communications are to be intercepted."). As for Le's contention that the Government failed to terminate the wiretaps once their objective had been reached and also failed to minimize its interceptions, the defendant fails to support this argument with any concrete examples. He appears to rely solely on the fact that the Government intercepted over 9,000 calls in the course of its investigation. The number of calls standing alone, however, shows nothing with respect to these points. *Cf. United States v. Killingsworth*, 117 F.3d 1159, 1165–66 (10th Cir.1997). This investigation involved an apparently wide-ranging criminal activity over an extended area and period of time. The Government was authorized to monitor calls within the allotted period "until communications are intercepted that fully reveal the manner in which the persons named ... participate in the specified offenses and that fully reveal the identities of their co-conspirators, their places of operation, and the nature of the conspiracy involved therein...." *See e.g.* Govt. Exh. C, Order Authorizing Interception at p. 7. Defendant has not shown that the Government exceeded this objective or that it failed to minimize the interception of communications unrelated to that objective.

In sum, the defendants have not overcome the presumption that the authorization of the wiretaps was proper. Accordingly, the defendants' motions to suppress the wiretap evidence are denied.

2. *Defendant Hernandez's Motion for Bill of Particulars.*

 Defendant Hernandez moves for an order directing the Government to provide a bill of particulars specifying various details of the alleged conspiracy and the acts manifesting the defendant's participation in the conspiracy.

 The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense. *United States v. Higgins*, 2 F.3d 1094, 1096 (10th Cir.1993). A bill of particulars is not intended to serve as a discovery device or to require the disclosure of the proof planned for trial. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988). A defendant is not entitled to notice of all the evidence the government intends to produce, but only to the theory of the government's case. *United States v. Levine*, 983 F.2d 165, 167 (10th Cir.1992).

After examining the record and the arguments of counsel, the court concludes the defendant is not entitled to a bill of particulars. The Second Superseding Indictment sets forth the essential elements of the various offenses charged against the defendant. This information includes various particulars of the alleged offenses, including the time of the alleged conspiracy, the identities of the co-conspirators, and the objective of the conspiracy. Additionally, the Government has provided the defendants with voluminous discovery in this case and has provided specific incident reports that relate to particular counts against the defendant. This information is sufficient to allow the defendant to adequately prepare his defense, to avoid surprise at trial, and to avoid double jeopardy. *See United States v. Canino*, 949 F.2d 928, 949 (7th Cir.1991), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992) (A bill of particulars is not required where the information necessary for one's defense can be obtained through some other satisfactory form.). Accordingly, the motion for bill of particulars is denied.

### 3. Defendant Hernandez's Motion in Limine Regarding Co–Defendants' Statements.

 Defendant Hernandez next moves for an order excluding any evidence at trial of hearsay statements made by alleged co-conspirators, and he also moves for a James[4] hearing to determine the admissibility of any such statements the Government intends to introduce.

The court conducted a James hearing on May 27th and heard testimony from DEA Agent Tyler Graham concerning the alleged conspiracy. The Government also introduced evidence of several intercepted phone calls allegedly involving the four above-named defendants. Without re-stating the particulars of the evidence presented at the hearing, the court notes that the evidence clearly satisfied, by a preponderance of the evidence, the requirements for admissibility of co-conspirator statements under Rule 801(d)(2)(E) with regard to each of the intercepted calls played at the hearing. Specifically, the evidence showed: that there was a conspiracy in existence;that each of the four defendants in question—Jesus Ramon Hernandez–Sendejas, Arcenio Soto Meza, Trung V. Le, and Michael Williams—were members of the conspiracy, as was the declarant in each of the phone calls played at the hearing; and that the statements made by the declarant in those calls were in the course of and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The court accordingly denied the defendant's motion in limine with respect to these statements.

As for the defendant's suggestion that the Government is required to make a similar showing as to each intercepted call it intends to use at trial, the court rejects this suggestion as impractical and likely to result in a significant waste of judicial resources. Rather, the court concludes the Government should provide the defendants with a list of calls it intends to offer in its case-in-chief with respect to each count of the indictment. The defendants already have available a translation of the substance of these calls. If defense counsel has grounds to believe a particular call includes hearsay statements not made in the course of and in furtherance of the conspiracy, defense counsel may file a written objection specifying the statement alleged to be hearsay. The court will then rule on the admissibility of the statement either in a pre-trial hearing or at the time of trial. At the present time, however, defendant's motion in limine is denied.

### 4. Motions to Sever.

 Defendants Michael Williams and James Black have each filed a motion for severance in which they seek separate trials from the other defendants named in the indictment.[5] Defendant Williams claims that although the Government has some evidence of dealings between himself and defendant Carlos Lopez, it has no evidence that he dealt with any other co-defendant. He argues that evidence of wrongdoing by other co-defendants will lead to "guilt by association" in the minds of the jury. Defendant Black similarly argues that the Government's evidence against him centers on his dealings with Lopez, and contends the jury will be prejudiced by evidence pertaining to the other defendants. Black additionally asserts that he would like to call some of the other co-defendants to testify that they do not

---

**4.** *See United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

**5.** The motions to sever were filed before the filing of the Second Superseding Indictment on May 7,2003. That Indictment added several counts against each of these defendants.

know him, but says he will be unable to do so because in a joint trial these witnesses will invoke their Fifth Amendment right to remain silent. Finally, Black argues that the defenses of he and his co-defendants will be antagonistic.

Rule 8(b) permits joinder of two or more defendants in the same indictment if it is alleged that "they ... participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Defendants have not shown that joinder was improper under this standard, and the allegations in the Second Superseding Indictment filed May 7, 2003, indicates that the counts involving these two defendants were related to, and were part of, a larger series of acts or transactions set forth in other counts. The named defendants were thus properly joined in the same indictment.

 In the federal system, "[t]here is a preference ... for joint trials of defendants who are indicted together." *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Rules 8(b)and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States,* 391 U.S. 123, 131, n. 6, 88 S.Ct. 1620, 20 L.Ed.2d 476(1968). Under Rule 14, the court may grant a severance if it appears the joinder will result in prejudice to a defendant. A district court should only grant a severance, however, "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. Under this standard, the defendants have not shown a risk of prejudice that would warrant a severance. Aside from vague claims of a possible "spill-over" ef-

fect, defendants do not explain why jury instructions would be inadequate to ensure that a jury separately considers the evidence pertaining to each of the defendants in arriving at its verdict. *See Zafiro,* 506 U.S. at 539–41, 113 S.Ct. 933 (even when there is a risk of prejudice, less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice). Defendant Williams argues that the Government might try to introduce evidence of inculpatory statements made by non-testifying co-defendants, thereby violating his right to confront the witnesses against him. *See Bruton,* supra. As the Government points out, however, any such statements can be redacted to avoid confrontation problems. As for defendant Black's allegation that he will be unable to call co-defendants to testify that they do not know him, the defendant has not shown that any such testimony is material to the charges against him. He has thus failed to show prejudice from a joint trial even assuming these witnesses would testify as he claims. *Cf. Id.* at 539, 113 S.Ct. 933 ("[A] defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.") (emphasis added). Likewise, Mr. Black has shown no risk of prejudice from antagonistic defenses.

In sum, the court finds that the defendants have been properly joined for trial, and that no grounds have been shown for a separate trial as to any of the counts or defendants joined in the indictment.

### 5. *Defendant Le's Motion to Dismiss*

 At the motions hearing, defendant Le asserted an oral motion to dismiss the indictment on the grounds of vindictive prosecution. Le claims the Government added counts against him in the Second Superseding Indictment (Counts 38, 39

and 40) merely because he refused to plead guilty and has insisted upon exercising his right to a trial.

▮▮▮ In order to maintain a claim for prosecutorial vindictiveness, a defendant has the burden of proof and must establish either (1) actual vindictiveness or (2) a realistic likelihood of vindictiveness that will give rise to a presumption of vindictiveness. *United States v. Wall,* 37 F.3d 1443,1447 (10th Cir.1994). "If the defendant successfully bears that burden, the prosecution must 'justify its decision with legitimate, articulate, objective reasons' for its actions." *Id.*(quoting *United States v. Raymer,* 941 F.2d 1031, 1040 (1991)). If the defendant does not meet that burden, however, the district court need not reach the issue of the government's justification. *Raymer,* 941 F.2d at 1040.

The court finds the defendant has failed to meet his burden of establishing actual vindictiveness or circumstances giving rise to a presumption of vindictiveness. In support of his claim, defendant relies primarily upon the timing of the Government's charging decision. In *Bordenkircher v.Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Supreme Court found that a presumption of vindictiveness does not arise when a prosecutor offers a defendant a chance to plead guilty or face more serious charges, provided the prosecutor has probable cause on the more serious charges and the defendant is free to accept or reject the offer. *See id* at 363–64, 98 S.Ct. 663. In *United States v.Goodwin,* 457 U.S. 368, 384, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), under facts more analogous to the present case, the Supreme Court rejected a defendant's claim of vindictiveness by noting that "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained

only as a penalty imposed on the defendant is so unlikely that a presumption of vindictiveness certainly is not warranted." After considering the totality of circumstances, including the multitude of charging decisions the had to consider in a case involving so many defendants, the court concludes that the addition of the three "phone counts" (under 21 U.S.C. § 843(b)) in the Second Superseding Indictment does not give rise to an inference of vindictiveness. Nor does any evidence of actual vindictiveness appear in the record. Accordingly, the defendant's motion to dismiss the indictment is denied.

*Conclusion*

The defendants' Motions to Suppress Wiretap Evidence (Docs. 203 & 209); Motion for Bill of Particulars (Doc. 208); Motion in Limine (Doc. 207); Motions to Sever (Docs. 215 & 220); and oral Motion to Dismiss are DENIED.

Defendant Williams' Motion to Consider Pretrial Motions Out of Time (Doc. 219) and defendant Ornelas' Motion to Withdraw Motions (Doc. 229) are GRANTED.