**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

GLORIA RAMIREZ-
ENCARNACION,

  Defendant - Appellant.

No. 01-1030

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 00-CR-18-6-S)**

---

Nancy Holton, Boulder, Colorado, appearing for Appellant.

James C. Murphy, Assistant United States Attorney (Richard T. Spriggs, United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **McWILLIAMS**, Circuit Judge, and **RUSSELL**[*], District Judge.

---

**TACHA**, Chief Circuit Judge.

---

[*] The Honorable David L. Russell, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

Defendant Gloria Ramirez-Encarnacion pleaded guilty to one count of using a communication facility to facilitate a felony in violation of 21 U.S.C. § 843(b). She brings this appeal challenging the district court's refusal to suppress evidence obtained through a wiretap. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

Beginning in 1996, the U.S. Drug Enforcement Administration ("DEA") conducted an ongoing investigation of a group of Mexican nationals suspected of transporting drugs into the United States. This multi-state investigation eventually led to a DEA investigation of the Grett Dairy in Olathe, Colorado. On November 12, 1999, District Judge John L. Kane, Jr., authorized interception of wire communications from that facility. Judge Kane eventually authorized further interception of communications from that facility, as well as interceptions from Ramirez-Encarnacion's house. As a result of these investigations, police arrested numerous subjects, including Ramirez-Encarnacion, on a multi-count indictment. Ramirez-Encarnacion pleaded guilty to one count of using a communication facility to facilitate a conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 843(b). Other counts against Ramirez-Encarnacion were dismissed on the motion of the United States. The sole issue brought on appeal is whether sufficient evidence existed to support the

district court's finding that a wiretap was necessary for the successful completion of this investigation.

## II. Discussion

We review for an abuse of discretion a district court's determination that a wiretap was necessary.[1]  A defendant bears the burden of proving that a wiretap is

[1] There is a conflict of authority in the Tenth Circuit regarding the proper standard of review for a district court's determination that a wiretap application satisfied the necessity requirement.  Compare United States v. Castillo-Garcia, 117 F.3d 1179, 1186 (10th Cir. 1997) (holding that necessity under 18 U.S.C. § 2518(1)(c) is a question of law reviewed de novo), with United States v. Armendariz, 922 F.2d 602, 608 (10th Cir. 1990) (reviewing the conclusion that a wiretap was necessary for an abuse of discretion).  After reviewing the relevant authority, we have concluded that the Armendariz court properly stated the standard of review: "Although we examine de novo whether 'a full and complete statement' was submitted meeting section 2518(1)(c)'s requirements, we review the conclusion that the wiretap[ ] [was] necessary in each situation for an abuse of discretion."  Id. (quoting United States v. Brown, 761 F.2d 1272, 1275 (9th Cir. 1985)).  In so doing, we bring our circuit into accordance with the authority of a majority of other circuits.  States v. Phillips, 959 F.2d 1187, 1189 (3d Cir. 1992); United States v. Sobamowo, 892 F.2d 90, 93 (D.C. Cir. 1989); United States v. Zambrana, 841 F.2d 1320, 1329-30 (7th Cir. 1988); Brown, 761 F.2d at 1275; United States v. Alonso, 740 F.2d 862, 868 (11th Cir. 1984); cf. United States v. Thompson, 210 F.3d 855, 859 (8th Cir. 2000) (treating a district court's determination that necessity existed for a wiretap as a factual question reviewed for clear error); United States v. Diaz, 176 F.3d 52, 109 (2d Cir. 1999) (holding Court of Appeals' role in reviewing issuance of wiretap order is not to make a de novo determination but to decide if facts were minimally adequate to support determination that was made); United States v. David, 940 F.2d 722, 728 (1st Cir. 1991) (formulating the question as whether "the issuing court could reasonably have concluded that normal investigatory procedures reasonably appeared to be unlikely to succeed").

We have circulated this footnote to the en banc court, which has unanimously agreed that to the extent any of our earlier cases can be viewed as

(continued...)

invalid once it has been authorized. United States v. Quintana, 70 F.3d 1167, 1169 (10th Cir. 1995). In order to prove that a wiretap is necessary, the government must show that traditional investigative techniques have been tried unsuccessfully, reasonably appear to be unsuccessful if tried, or are too dangerous to attempt. 18 U.S.C. §§ 2518(1)(c), 2518(3)(c).[2] If any of these traditional investigative techniques has not been tried, the government must explain why with particularity. United States v. Mitchell, 274 F.3d 1307, 1310 (10th Cir. 2001). The government must also explain a failure to use other techniques such as pen registers or trap and trace devices. Castillo-Garcia, 117 F.3d at 1187-88. We consider "all the facts and circumstances in order to determine whether the government's showing of necessity is sufficient to justify a wiretap," id. at 1187 (internal quotation marks and citation omitted), and read the necessity requirement "in a common sense fashion," United States v. Nunez, 877 F.2d 1470, 1472 (10th Cir. 1989). A successful challenge to the necessity of a wiretap

---

[1](...continued)
inconsistent with our holding here, they are overruled.

[2] We have repeatedly defined traditional techniques as: "(1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants." United States v. Vanmeter, 278 F.3d 1156, 1163-64 (10th Cir. 2002) (quoting Castillo-Garcia, 117 F.3d at 1187). Pen registers and trap and trace devices are also included in the range of traditional techniques. Castillo-Garcia, 117 F.3d at 1187-88.

results in the suppression of evidence seized pursuant to that wiretap. United States v. Green, 175 F.3d 822, 828 (10th Cir. 1999).

After conducting a thorough review of the record, we have concluded that the district court did not abuse its discretion in finding that the government made an adequate showing of necessity. The record discloses that the government attempted surveillance, but that the rural nature of the area made concealing surveillance vehicles almost impossible. The United States interviewed several persons and utilized confidential sources associated with the conspiracy. The affidavit indicates that the tight-knit nature of the conspiracy made undercover infiltration impossible, and that search warrants would have been counterproductive.[3] Pen registers were installed prior to the application for a wiretap. In spite of these efforts, the identity of many of the conspirators and the full extent of the conspiracy remained unknown. Given this factual background, we find that the district court did not abuse its discretion in finding that there was an adequate showing of necessity to support the issuance of a wiretap order.

In addition to challenging the facial validity of the wiretap authorization,

---

[3] Search warrants were executed in California and at conspirator Emett Grazier's private residence in Colorado. Grazier was arrested and provided some information to the DEA. The DEA apparently found little additional information, however, and concluded that the only result of further warrants would be to alert the subjects to the investigation. Additionally, when the search warrants were executed in California, the defendants did, in fact, flee to Mexico.

Ramirez-Encarnacion alleges that the government made material omissions in its affidavit. If such allegations are supported in the record, then "the resultant evidence must be suppressed." Green, 175 F.3d at 828 (holding that a wiretap is subject to the strictures of Franks v. Delaware, 438 U.S. 154 (1978)). Ramirez-Encarnacion complains that Special Agent Butler did not pursue all available investigative possibilities because she had already planned to obtain a wiretap, and that the United States did not disclose this fact. Butler admitted that she began preparing her affidavit as early as August or September 1999, whereas the wiretap application was not submitted until November 1999. This does not indicate that early plans for a wiretap prevented the DEA from diligently pursuing the investigation prior to the wiretap, however. As the district court observed, the affidavit was 52 pages long and described information gathered over the course of several months. Careful preparation for a wiretap application does not make the wiretap any less necessary.

Ramirez-Encarnacion also complains that the government omitted a chart outlining the conspiracy. While it is true that the government had a chart that identified the structure of the conspiracy, the source of the drugs, and the location of the drugs, this chart does not prove that Butler misled the court when she indicated that a wiretap was needed. We agree with the district court's finding that "[t]he diagram was likely a product of previous investigatory work, but also

projections, and even guesses, on the part of the investigators. Without admissible evidence to back it up, it was of no use." Moreover, several persons who were not listed on the chart were indicted, indicating that the chart did not comprehend the full scope of the conspiracy. Finally, the information from the chart is included in the affidavit. The exclusion of the chart was therefore not a material omission.

The remainder of the allegations made by Ramirez-Encarnacion are simply not supported in the record. Specifically, she argues that Butler failed to disclose that she would bring in several more agents to assist in the investigation after the wiretap was granted or that investigative assistance was already available from a number of agencies. However, the background section of the affidavit shows that she was working with several agencies prior to the application, and it is not clear how such an allegation, if substantiated, is relevant to the finding of necessity. Ramirez-Encarnacion's argument appears to be that Butler failed to enlist assistance or disclose the availability of assistance prior to obtaining the wiretap, because she intended to obtain a wiretap from the investigation's inception. We agree with the district court, however, that such an inference is unwarranted, because substantial surveillance occurred prior to obtaining the wiretap, other agencies were already assisting the DEA, and the investigation grew to some extent as a result of the wiretap.

Additionally, Ramirez-Encarnacion asserts that Butler did not indicate that a warrant was, in fact, executed on the house of Emett Grazier. This is plainly included on page 31 of the affidavit. Ramirez-Encarnacion also claims that Butler did not disclose that she had not sought the help of agents in California on a related investigation. Ramirez-Encarnacion does not state what information might have been obtained, however, or how that information would have shown that a wiretap was unnecessary. Ramirez-Encarnacion claims that Butler failed to disclose that some co-conspirators were cooperating with authorities. But pages 26 and 31 of the affidavit plainly state that co-conspirators were cooperating with authorities. Finally, Ramirez-Encarnacion argues that Butler submitted her oath after the order was issued, therefore failing to comply with the requirement that applications must be made upon oath or affirmation to a judge. However, this argument is completely unsupported by any evidence, other than Ramirez-Encarnacion's bare assertions. Given this, we will not overturn the district court's finding that such an unusual sequence did not occur.

## III. Conclusion

We hold that the district court did not abuse its discretion by finding that a wiretap was necessary, and we therefore AFFIRM its ruling.