**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 6, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EFREN GURROLA-RODRIGUEZ,
also known as Efren Gurrola,

Defendant - Appellant.

No. 06-4192

Utah

(D.C. No. 2:04-CR-769-TC)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **McWILLIAMS**, and **GORSUCH**, Circuit Judges.

---

Efren Gurrola-Rodriguez (Gurrola) moved to suppress evidence obtained

from the wiretap of his telephone claiming the government failed to prove the

statutory necessity requirement. The district court denied the motion. We affirm.

## I. BACKGROUND

During the spring of 2004, Special Agent David Crosby with the Drug

Enforcement Administration (DEA) began investigating a woman suspected of

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

being a methamphetamine drug dealer in the Salt Lake City region of Utah. Through a confidential source, Agent Crosby learned that Silvia Uribe was the dealer. Over the next several months, Agent Crosby conducted multiple undercover controlled buys with Uribe and her husband Alberto Camerana. With each successive transaction Agent Crosby would increase the amount purchased and attempt to place time pressures on Uribe in order to discover her source of supply. Additionally, undercover officers obtained records detailing the calls made by Uribe and Camerana on their telephones and placed a global positioning satellite tracking device on Uribe's car.

By mid-August the DEA was still unable to determine Uribe's source of supply. The DEA submitted an application for a wiretap of two phones subscribed to Camerana. Agent Crosby's supporting affidavit detailed the investigation up to that point and explained a wiretap was necessary to discover Uribe's supplier. The wiretap application was granted.

In a relatively short period of time the DEA was able to determine through the use of the wiretaps that Gurrola was connected to Uribe and Camerana's drug dealing. After monitoring several calls placed between Uribe and her suspected supplier, the DEA was able to isolate the phone number being used by her supplier. Physical surveillance established the number was being used by Gurrola.[1] On September 13, 2004, the DEA submitted an application for a

---

[1] The number was listed under another person's name.

wiretap of the phone connected to that number and identified Gurrola as one of the targets of the investigation. The reviewing court approved the application. Five additional wiretap applications targeting Gurrola were subsequently submitted and approved.

After several months of continued investigation, the DEA was unable to penetrate the group further. A fourteen-count indictment was filed on November 18, 2004, naming six defendants including Uribe, Camerana and Gurrola. Gurrola was only named in Count 7, charging him with conspiracy to distribute 500 grams or more of methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846. Gurrola filed a motion in limine to suppress evidence obtained through the several wiretaps on the telephone used by him. Gurrola argued, *inter alia*, the government failed to meet the statutory requirement of proving the wiretaps were necessary. Gurrola requested a hearing in order to prove the government failed to meet its burden of necessity, claiming the affidavits in support of the wiretap applications were false or deliberately misleading. The district court held an evidentiary hearing and denied Gurrola's motion to suppress. It concluded each of the wiretap applications targeting Gurrola was supported by a sufficient showing of necessity.

A jury convicted Gurrola and he was sentenced to 121 months imprisonment. He appeals generally from that judgment and sentence, but in particular from the denial of his motion to suppress.

## II. DISCUSSION

When the government seeks to obtain a wiretap, it must provide to the court a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). If the judge is convinced, it may issue an ex parte order authorizing the wiretap. *See* 18 U.S.C. § 2518(3)(c).

Gurrola argues the government failed to prove the wiretap of his phone was necessary. "We review for an abuse of discretion a district court's determination that a wiretap was necessary." *United States v. Ramirez-Encarnacion*, 291 F.3d 1219, 1222 (10th Cir. 2002).[2] The "defendant bears the burden of proving that a wiretap is invalid once it has been authorized." *Id*. "If a defendant succeeds in showing that the necessity requirement was not met, evidence seized pursuant to the wiretap must be suppressed." *United States v. Cline*, 349 F.3d 1276, 1280 (10th Cir. 2003).

"The purpose of the 'necessity' requirement is to ensure that the relatively intrusive device of wiretapping is not resorted to in situations where traditional

---

[2] Gurrola argues there is a conflict of authority in this Circuit regarding the appropriate standard of review. This conflict was resolved in the en banc footnote to *Encarnacion*, 291 F.3d at 1222 n.1. "Although we examine de novo whether 'a full and complete statement' was submitted meeting [statutory] requirements, we review the conclusion that the wiretap[ ] [was] necessary in each situation for an abuse of discretion." *Id*. (quoting *United States v. Armendariz*, 922 F.2d 602, 608 (10th Cir. 1990)).

investigative techniques would suffice to expose the crime." *United States v. Castillo-Garcia*, 117 F.3d 1179, 1187 (10th Cir. 1997), *overruled on other grounds by Encarnacion*, 291 F.3d at 1222 n.1.  Generally, normal investigative procedures include:

> (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants.  In addition, if other normal investigative techniques such as pen registers or trap and trace devices have not been tried, a similar explanation must be offered as to why they also would be unsuccessful or too dangerous.

*Id*.  "[T]he government may obtain a wiretapping warrant without trying *any* other methods of investigation, if it demonstrates that normal investigatory techniques reasonably appear to be unlikely to succeed if tried, or to be too dangerous to try." *Id*.

Gurrola does not claim the first wiretap application of Uribe and Camerana's phones was improper.  Rather, he argues the second wiretap – obtained on September 13, 2004 – and its fruits should have been suppressed by the district court because the narcotics agents had not utilized normal investigative techniques before seeking the wiretap.[3]  Relying on *United States v.*

---

[3]  As part of his argument to the district court and on appeal, Gurrola asserts the information contained in the government's wiretap application was false or deliberately misleading because it grafted investigative efforts prior to the first wiretap and implied such investigation was previously targeted against Gurrola.  Ordinarily, when a defendant provides sufficient information disputing the veracity of a government's wiretap application, the defendant is entitled to a

*Mondragon*, Gurrola argues the affidavit in support of his phone's wiretap lacked the requisite analysis of alternative investigative procedures which were used or considered by law enforcement against him. 52 F.3d 291 (10th Cir. 1995). In *Mondragon*, we held a second successive affidavit completely failed to address necessity and should have been suppressed. Gurrola also relies on *United States v. Carnerio*, in which the Ninth Circuit found successive wiretaps invalid because of a failure by the government to show which particular investigative steps were taken as to each new potential wiretap subject. 861 F.2d 1171, 1183 (9th Cir. 1988). Both cases are distinguishable from this one. The affidavit in support of the wiretap of Gurrola's telephone more than adequately addressed the government's investigation of Gurrola prior to the wiretap request and demonstrated why a wiretap was necessary.

---

hearing to challenge the truthfulness of factual statements made in the supporting affidavit. *See United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). It is the defendant's burden to overcome the presumption that an authorized wiretap was proper. *Id.*

The district court held this threshold showing was not met. Gurrola has not appealed from this holding, but he continues to argue the statements in the affidavits are false or deliberately misleading. Such perfunctory arguments are insufficient to overcome the affidavit's presumptive facial validity. Accordingly, we limit our review to whether the district court correctly found the wiretap of Gurrola's phone was necessary based on facially sufficient affidavits. As part of our review, we consider whether the government met its burden to prove the wiretap targeting the phone used by Gurrola was necessary. *Castillo-Garcia*, 117 F.3d at 1188 ("The statements [in the affidavit] must be factual in nature and they must specifically relate to the individuals targeted by the wiretap.").

A.  Prior Investigative Efforts

The affidavit in question identified Uribe, Camerana and Gurrola as targets of the wiretap application and discovering Gurrola's source of supply as one of its objectives.  It identified several instances in which traditional investigative and enhanced procedures were utilized.  The affidavit discussed successful visual and aural surveillance of Gurrola which identified him as the suspected user of the targeted telephone number and described the conversations between Uribe and Gurrola resulting from the first wiretap.  For example, on one occasion, an officer observed Gurrola leaving Uribe's house, called the targeted phone number, observed Gurrola pickup the call and hangup when no one responded.  The officer was able to identify Gurrola as the phone's user through the registration of the vehicle he was driving and the photo on his drivers license.

The affidavit detailed the debriefing of a confidential source who was able to provide information of Gurrola's involvement in the distribution of methamphetamine.  The affidavit also provided information summarizing the content of Gurrola's phone toll records received pursuant to an administrative subpoena.  Significantly, it identified the number of calls placed from Gurrola's phone to Uribe and Camerana's home phone which was not targeted by the original wiretap.

B.  Futility or Danger of Continuing Normal Investigative Activities

The affidavit discussed the limited nature of continuing the traditional

methods being used. Although recognizing valuable information was obtained from physical surveillance, the affidavit discussed how, without capturing vocal communications, visual surveillance would not lead to the identity of Gurrola's supplier. Because many of the meetings between Uribe and Gurrola took place inside, their interactions would be out of law enforcement's view and the significance of the meeting lost. The affidavit recognized the usefulness of undercover purchases to identify Uribe and Camerana, but detailed how Uribe and Camerana would not discuss their supplier with the confidential source. It discussed Uribe and Camerana's growing suspicion of the confidential source, who introduced the undercover agent to Uribe. No other person inside the organization could be utilized as a confidential source without tipping the group off to the investigation.[4]

The affidavit also identified traditional methods which were not attempted or would be too dangerous to try. It asserted the use of interviews or grand juries would not be useful because the persons targeted would likely tip off the organization. Many of the people identified as potential witnesses were illegal aliens who used false names and the government's ability to correctly identify them was deficient. Given Uribe, Camerana and Gurrola's level of culpability,

_____

[4] By the time of the wiretap application, it was discovered that Uribe was selling drugs to another dealer who knew the undercover agent was a police officer. Should the group discover the undercover agent's true identity it would put the agent and the investigation at risk.

immunity in exchange for cooperation would thwart the public policy of holding them accountable for their illegal narcotic activities. The affidavit asserted the use of search warrants would alert the organization to the investigation and bring it to a premature close. At the time of the affidavit, it was not clear where or in how many locations the drugs were being stored.

Dialed Number Recorders (DNR), as used against Uribe and Camerana, had been valuable up to that point in the investigation, but would provide little help in furthering the investigation of Gurrola or his supplier. Because a DNR provided only a historical record of numbers dialed or received and the subscriber's name does not always match the user, the DNR information could not identify the actual caller or the significance of the conversations. By way of example, the affidavit relayed the telephone number Gurrola had been using was identified numerous times on the DNR of Uribe's phone, however, it was not until the wiretap of her phone that the government discovered Gurrola's number was not being used by its subscriber.

In sum, the affidavit described in detail with particularity to Gurrola what investigatory techniques were tried, the result, and why any unutilized method was likely to be ineffective or dangerous. Consequently, the district court did not abuse its discretion by concluding the wiretap was necessary.

AFFIRMED.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge