**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GLADSTONE McDOWELL,

    Defendant-Appellant.

Nos. 11-3130 & 11-3138

(D.C. No. 2:09-CR-20133-JWL-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.
_____

A jury convicted Defendant Gladstone McDowell on five charges arising from his involvement in a drug trafficking conspiracy. The jury heard evidence obtained through a wiretap of Defendant's cellular phone and the phones of some of his co-conspirators. On this appeal, we consider whether the district court abused its discretion in authorizing the wiretaps. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

The facts relating to the underlying marijuana trafficking conspiracy are set forth more fully in United States v. Stephen Blackburn, --- F. App'x ---, No. 11-3294 (10th Cir. 2013) (unpublished). The facts relevant to this case are as follows. In November

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

2007, Defendant was a passenger in a vehicle stopped on U.S. Highway 54 in Goodwell County, Oklahoma. Police found $139,980 in cash in the vehicle, which Defendant claimed verbally and in writing. In March 2008, the Drug Enforcement Administration (DEA) began investigating Defendant and other persons for suspected drug trafficking in the Kansas City, Missouri, area.

In April 2009, DEA investigators applied to the U.S. District Court for the District of Kansas for authorization to intercept wire communications from a number of suspects' telephones, including Defendant's cellular phone. The affidavits in support of the application detailed the techniques already used in the investigation, including physical surveillance, pen registers, internet record searches, review of financial records, trash searches, and interviews with confidential informants. By August 2009, or sometime thereafter, the district court had authorized wiretaps for seven telephones, including Defendant's. The intercepts allowed investigators to identify packages of suspected marijuana that were shipped from UPS stores in Phoenix, Arizona, and delivered to addresses in or near Kansas City, Missouri.

In November 2009, a federal grand jury issued a ten-count indictment against Defendant and nineteen others. The superseding indictment charged Defendant with the following five counts: (1) conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana, (2) participating in a continuing criminal enterprise, (3) conspiracy to commit money laundering, (4) money laundering, and (5) attempted possession of more than 50 kilograms of marijuana with intent to distribute. Prior to trial, Defendant sought to suppress wiretap evidence against him on the basis that the wiretaps had been

- 2 -

obtained in violation of 18 U.S.C. § 2518(1)(c). The district court denied this motion to suppress, and a petit jury convicted Defendant on all five counts. The district court sentenced him to 324 months' imprisonment. Defendant now appeals the district court's denial of his motion to suppress.

## II.

Federal law requires the Government to obtain a court order before intercepting wire or other electronic communications. 18 U.S.C. § 2518(3). An appropriate court may authorize the intercept if it determines, among other things, that the wiretap is necessary—that is, normal investigative procedures have failed or are likely to fail. § 2518(3)(c). Thus, an application for a wiretap order must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." § 2518(1)(c). If the Government fails to comply with the statutory requirements, the evidence obtained through the wiretap must be suppressed. § 2515. United States v. Faulkner, 439 F.3d 1221, 1223 (10th Cir. 2006).

Defendant makes two arguments based on the wiretap statutes. First, he argues the Government did not submit a "full and complete statement" in support of necessity because it withheld material information. Second, he argues the district court erred in concluding the wiretaps were necessary.

## A.

We ordinarily review de novo whether the Government presented a full and complete statement in support of a wiretap. United States v. Verdin-Garcia, 516 F.3d

884, 890 (10th Cir. 2008). This inquiry is usually straightforward, requiring us to look at the affidavit and see if it is complete. Here, however, Defendant claims the Government "withheld information uncovered as part of the prior traditional investigation." Appellant's Br. at 11. In this situation, we naturally must look beyond the four corners of the affidavit to the allegedly omitted information. But Defendant was not able to introduce any of this information below because the district court denied him an evidentiary hearing.

We have held that evidentiary hearings in the context of wiretap applications are subject to the requirements of Franks v. Delaware, 438 U.S. 154 (1978) and its progeny. See United States v. Green, 175 F.3d 822, 828 (10th Cir. 1999). Franks held in the Fourth Amendment context that a defendant could challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. Franks, 428 U.S. at 155–56. If a defendant makes a substantial showing of a Franks violation, "the Fourth Amendment requires that a hearing be held at the defendant's request." Id. at 156. We have extended the Franks framework to omissions of material information, which is what Defendant claims occurred here. Green, 175 F.3d at 828.

In the district court, Defendant argued the court would "need to hear evidence from the Government to determine whether the requesting agent gave a 'full and complete statement' to the issuing judge for each affidavit." Record on Appeal ("ROA"), vol. I at 135. The district court correctly concluded Franks provided the standard for

determining whether Defendant was entitled to an evidentiary hearing.[1] The court concluded Defendant failed to make a substantial showing that the Government intentionally or recklessly omitted material evidence from the seven wiretap applications. Because Defendant was not entitled to a Franks hearing, the Court denied his suppression motion "to the extent that [it is] based on alleged misrepresentations or omissions in the affidavits or the alleged failure of the applicants to provide a full and complete statement regarding necessity." United States v. McDowell, 2011 WL 32440 at *4 (D. Kan. Jan. 4, 2011).

Surprisingly, Defendant does not argue on appeal that the district court erred in denying him a Franks hearing. Instead, he only argues the district court erred in concluding the wiretap applications contained a "full and complete statement" regarding the wiretap's necessity because the Government "withheld information uncovered as part of the prior traditional investigation."[2] Appellant's Br. at 11. This approach, however, leaves Defendant's argument hung out to dry. Defendant asks us to conclude the

---

[1] Defendant was under the mistaken impression that the evidentiary hearing he sought was not a Franks hearing because he brought the motion to suppress under 18 U.S.C. § 2518(10)(a) as opposed to the Fourth Amendment. He thought the district court would only need to conduct a Franks hearing if it determined Defendant "must raise the issue in the form of a 4th Amendment violation." ROA, vol. I at 135. Although Franks arose in the Fourth Amendment context, Green clearly extended the Franks framework to federal wiretap applications. And § 2518 does not explicitly provide for a Franks-style hearing. So an evidentiary hearing in a wiretap suppression motion is authorized by this circuit's extension of Franks to the wiretap context, not an independent statutory provision.

[2] Defendant reiterated this position at oral argument. The Court asked, "So you're not arguing that [the district court] erred in not granting you a Franks hearing, you're just arguing that [the court] erred in saying that it was . . . complete?" Defense counsel replied, "Correct."

Government omitted material facts.  Because these omitted facts are, by definition, *not* contained in the affidavit supporting the wiretap application, they needed to be presented in a <u>Franks</u> hearing.  Defendant could have appealed the district court's denial of a <u>Franks</u> hearing, but he did not.  Instead he asks us to conclude the Government omitted material information, even though we have *no* evidence that any additional material information even existed.  This we cannot do.  <u>See</u> <u>United States v. Yeje-Cabrera</u>, 430 F.3d 1, 8 (1st Cir. 2005) (observing that "[a] <u>Franks</u> hearing, not de novo review in this court, is the proper route for addressing" the concern that "the government omitted material information that would have prevented a finding of necessity").

B.

We may, however, consider Defendant's argument that the facts recited in the affidavit were insufficient to support the district court's finding of necessity.  We review the court's decision for abuse of discretion.  <u>United States v. Ramirez-Incarnacion</u>, 291 F.3d 1219, 1222 n.1 (10th Cir. 2002) (en banc footnote).  Once a court has authorized a wiretap, the defendant bears the burden of proving the wiretap was invalid.  <u>Id.</u> at 1222.  A wiretap is "necessary" if traditional investigative techniques have been tried unsuccessfully, reasonably appear to be unsuccessful if tried, or are too dangerous to try.  <u>Id.</u>  Traditional investigative techniques include: (1) standard surveillance; (2) questioning and interrogating witnesses or suspects, including through the use of grand jury proceedings; (3) search warrants; (4) infiltration of criminal groups by confidential informants and undercover agents; (5) pen registers; and (6) trap and trace devices.  <u>United States v. Foy</u>, 641 F.3d 455, 464 (10th Cir. 2011).  But the Government need not

"exhaust[] all possibilities," and the "overall burden on the government is not great." Verdin-Garcia, 516 F.3d at 890 (internal quotation marks omitted). Furthermore, "the law enforcement goal of uncovering the size and scope of the conspiracy may justify the authorization of wiretaps." Foy, 641 F.3d at 464–65.

## 1.

Defendant first argues the wiretap applications were supported by "generalized and conclusory allegations" rather than specific facts. Appellant's Br. at 14. He identifies three such generalities. First, he points to the statement that "members of this [Drug Trafficking Organization] have proven consistently that they are technologically savvy and are extremely smart in the ways of avoiding detection by law enforcement." ROA, vol. IV at 98. Defendant says the affidavits gave no examples of this sophistication. But, in fact, the affidavits detailed a confidential source's statement that one conspirator "frequently dumps his phones." Id. at 52. They also showed that members of the organization used phones subscribed under other names or that listed no subscriber at all. See, e.g., ROA, vol IV at 266. The affidavits indicated members of the organization communicated with each other through computer-based social networking sites. Id. at 99. Finally, the affidavits documented the use of video cameras outside a house used as the organization's "hub." Id. at 106. These specific facts back up the general statement that the conspirators were technologically savvy.

The next generality Defendant identifies is the affidavits' statements that cellular phone companies frequently allow customers to register under fictitious names "or to provide no subscriber information at all (as in pre-pay cell phones)." Id. at 99.

Defendant says the affidavit provided "[n]o examples of cell phones being acquired under a false name or the use of pre-pay cell phones in this particular investigation." Appellant's Br. at 17. But, in fact, the affidavit for Target Telephone #4 indicates the telephone was a "pre-paid cellular phone serviced by T-Mobile USA." ROA, vol. IV at 266. The record also indicates that Target Telephone #7 was a "prepaid cellular telephone." Id. at 817. And although the affidavits gave no specific evidence that the phones were registered under fictitious names, they did indicate that five of the seven phones were used by someone to whom they were not registered or subscribed. Additionally, one phone used by conspirator Michael Francois (later identified by his real name, Curtis Pitter) was subscribed to "Rhon Dean," while another of Francois's telephones was registered to "Dean Rhonld." Id. at 198, 347. A trained DEA agent, and a district court, could reasonably infer these names were fictitious, even though an actual member of the conspiracy was identified as "Dean Rhone." Id. at 41.

The third "generality" Defendant identifies is the following statement in the affidavits: "I know, based on my training and experience, that, as a security measure, high-ranking members of large-scale narcotics trafficking organizations normally only conduct narcotics transactions or provide specific information pertaining to their organization to trusted family members or associates within the organization." Id. at 101. Defendant says the affidavits did not connect this "broad characterization of all trafficking organizations" to the particular facts of this case. Appellant's Br. at 17. But Defendant has cited no authority suggesting a law enforcement officer cannot include in a

- 8 -

wiretap application information that he knows from his training or experience.[3] Nor does Defendant explain how this generalization undermines the district court's determination that the wiretap was necessary. The district court was free to give this generalization the appropriate weight. So this is an insufficient basis to overturn the court's necessity determination.

2.

Next, Defendant argues the investigators left untried a number of traditional investigatory methods that could have succeeded. Specifically, he says they could have used confidential informants, undercover agents, additional surveillance, and trash searches. The district court addressed each of these techniques when ruling on Defendant's motion to dismiss. The affidavits explained that Francois offered a confidential source, CS1, the opportunity to receive direct shipments of marijuana through the mail. But Francois did not suggest CS1 would be privy to any additional information about the conspiracy or be told where the marijuana was coming from. The affidavits also said it would be unlikely that an undercover agent could infiltrate the close-knit organization, especially considering that most of the organization's members were related by blood or marriage. We have noted that a "tight-knit, familial [drug trafficking] organization would be exceedingly unlikely to accept outsiders into its confidence. Verdin-Garcia, 516 F.3d at 891. So the affidavits adequately explained why

_____

[3] In the search warrant context, officers frequently recite facts they know through their training and experience, and we consider those facts in determining whether probable cause supported the warrant. See United States v. Mathis, 357 F.3d 1200, 1205 (10th Cir. 2004).

further use of confidential informants or undercover agents was unlikely to succeed.

Defendant argues the Government had a duty to make at least some "minimal efforts to use undercover agents and confidential informants." Appellant's Br. at 20. He cites the district court case of United States v. Wright, 156 F. Supp. 2d 1218 (D. Kan. 2001), where the Government tried unsuccessfully to use three informants to investigate a drug conspiracy. But the wiretap statute does not require the Government to *try* every normal investigative procedure and apply for a wiretap only when they fail. See Foy, 641 F.3d at 464. Rather, the court may authorize a wiretap if normal investigative procedures "reasonably appear to be unlikely to succeed if tried." 18 U.S.C. § 2518(3)(c).

The affidavits said additional physical surveillance was unlikely to yield more evidence because the organization's members had become "evasive and unusually cautious in their movements." Id. at 103. The affidavits detailed the use of security cameras for counter-surveillance. And ordinary surveillance had only resulted in the identification of low-level participants without showing the scope of the conspiracy. Finally, the affidavits said additional trash searches were unlikely to be profitable because Francois was observed burning his trash at one house, no trash was ever left out at another location, and the "hub" house was equipped with exterior surveillance cameras.

Based on this evidence in the affidavits, the district court could conclude that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." Id. Although traditional investigatory methods allowed investigators to locate some of the conspirators at various

times, they provided little information about "the size and scope of the conspiracy." Foy, 641 F.3d at 464–65. And the Government demonstrated that traditional investigative techniques were unlikely to yield the needed information. Accordingly, the district court did not abuse its discretion in denying Defendant's motion to suppress.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge