Filed 9/3/15  P. v. Dominguez CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JOE VALDEZ DOMINGUEZ,<br><br>　　Defendant and Appellant. | F068122<br><br>(Super. Ct. No. VCF241607D)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  Darryl B. Ferguson and Joseph A. Kalashian, Judges.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Joe Valdez Dominguez appeals from convictions for 26 counts, including two counts of attempted murder, discharge of a firearm at an inhabited

dwelling, conspiracy, participation in a criminal street gang, receipt of stolen property, and narcotics offenses. Defendant contends the trial court erred in denying his motion to suppress wiretap evidence because of alleged deficiencies in the affidavits by law enforcement officers. He also contends the sentence imposed on the gang enhancement for count 8, conspiracy to commit assault with a firearm, was an unauthorized sentence because the underlying offense was not a serious felony within the meaning of Penal Code section 1192.7, subdivision (c).[1]

Defendant further argues, and the People concede, that concurrent sentences he received for convictions on eight counts must be stayed pursuant to section 654. We reject the first two contentions and agree with the parties that section 654 applies to concurrent sentences imposed on eight convictions.

## PROCEDURAL BACKGROUND

On November 7, 2012, the trial court denied defendant's motion to suppress the wiretap evidence. Defendant's renewed suppression motion was denied on December 3, 2012. On August 16, 2013, four days after the beginning of a jury trial, defendant pled no contest to 26 counts including two attempted homicides, conspiracy to commit murder, conspiracy to participate in a criminal street gang, and narcotics offenses. He also admitted enhancements for participation in a criminal street gang, gun use, and for serving a prior prison term.

The trial court sentenced defendant on September 16, 2013, to a determinate sentence of 18 years 4 months. This included a consecutive term of one year eight months on the gang enhancement alleged on count 8 (§ 186.22, subd. (b)(1)(B)).[2] Several counts and enhancements were stayed pursuant to section 654. The court sentenced defendant to an indeterminate sentence of 25 years to life on count 1,

---

[1]Unless otherwise designated, all statutory references are to the Penal Code.

[2]Count 8 alleged defendant conspired pursuant to section 182, subdivision (a)(1) with an unknown person to commit the crime of assault with a firearm in violation of section 245, subdivision (a)(2).

2.

conspiracy to murder K.S. and D.S. (§§ 182, subd. (a)(1), 187, subd. (a)). Defendant was sentenced to additional consecutive sentences of 25 years to life for the use of a gun by a principal that caused the great bodily injury of each victim (§ 12022.53, subds. (d), (e)(1)). Defendant's total indeterminate sentence is 75 years to life. The court's indeterminate sentences on three other counts were stayed pursuant to section 654.

## FACTS

*Warrant for Wiretap*

The facts are derived from the preliminary hearing. California Department of Justice Special Agent Ryan Pontecorvo, a sworn peace officer for the State of California, worked under a narcotics team with the Bureau of Narcotic Enforcement. In May 2010, Pontecorvo was involved with a federal wiretap out of Delano. Pontecorvo was monitoring Jose Velez, the regimental commander of the Nuestra Familia in Delano.

***Conspiracy to Murder, Attempted Murder, Shooting at Inhabited Dwelling, Counts 1–4***

Pontecorvo intercepted a call between Velez and Felipe Ramirez, the Nuestra Familia regimental commander in Visalia. During the phone call the two regimental commanders described the mistaken killing of "a guy" who implicated Jonas Martinez. Pontecorvo contacted the Visalia Police Department and confirmed there was a murder there the day before, on May 19, 2010.[3] This led Pontecorvo to seek a new wiretap on Martinez.

Martinez was in charge of running security crews for the Visalia regiment. Defendant was in charge of day-to-day activities for the crew. Defendant passed out guns and drugs. He also made sure the gang received "all the taxes" from members. Pontecorvo obtained a warrant for defendant's phone, the second target phone.

Pontecorvo verified he was wiretapping defendant's phone by observing him talk to Martinez during an intercepted call. Pontecorvo obtained a warrant to wiretap Felix

---

[3]Unless otherwise indicated, all dates refer to the year 2010.

Ruiz, another member of the Nuestra Familia. Defendant changed his phone, causing Pontecorvo to obtain wiretaps on four phones belonging to defendant.

A call from defendant to Felix Ruiz intercepted 30 minutes after a shooting took place on July 27 was played for the court. Defendant was heard in the call planning a retaliatory act by having gang members walk up and shoot the victims on foot rather than doing so from a car. Defendant was also heard on the call planning a diversion prior to shooting the rival Asian gang members. Several more conversations were intercepted that evening. Defendant called off the retaliatory shooting that evening because there were too many "cops in the area."

On July 28 there were a series of phone calls. Defendant wanted shots fired in another part of town as a distraction. More distraction shots were fired, but the area where defendant wanted the shooting was "still hot." Defendant told a gang member that he would pick up a gun from Carlos Mojica and if they could not confirm a shooting, defendant would light an M-80, a quarter stick of dynamite, by a store. Defendant finally got confirmation there were a number of gang members in the hot spot.

A call was intercepted from defendant telling a gang member he was going to have someone fire off a 30-30, a high-powered rifle. At 12:05 a.m. on July 29 a call was made to defendant stating "the homies just blacked," slang for someone was shot. The caller told defendant one person was down but still breathing. Defendant wanted results as well as confirmation. Defendant learned from a participant in the shooting that two Asian gang members had been shot, a 50-year-old and a 17-year-old. A pejorative word was used in lieu of Asian.

Luma Fahoum, a violent crimes detective with the Visalia Police Department, testified that on July 27, a mother of Hispanic children who were playing football in the street with neighborhood kids saw two Asians and one Hispanic approach her children on bicycles. The ones on bicycles said "Southside OT's" and gunfire erupted, striking the mother's vehicle in front of her home. On July 28, a double shooting of two victims of

4.

Asian descent occurred nearby. One of the victims was 60 years old. Fahoum later realized the two incidents were related.

***Conspiracy to Sell Narcotics, Street Terrorism, Counts 5–7***

On June 1, a series of calls were intercepted in which defendant and other gang members arranged for the sale of narcotics. Agents observed defendant meet with others in a parking lot. Investigators believed defendant was involved in a conspiracy to sell methamphetamine, possessed it for sale, and the sale was for the benefit of a criminal gang.

***Conspiracy to Commit Street Terrorism and Assault with a Firearm, Counts 8–9***

On June 1, a call was intercepted between defendant and Martinez in which defendant said some Southsider gang members "were tripping on him" and he was "not strapping," meaning he was not carrying a gun. Defendant told Martinez they "were throwing their flag," meaning they were displaying their colors. Defendant asked Martinez to go into defendant's house and retrieve a ".38" from under the television cabinet and bullets from behind the television. Martinez was observed going into defendant's house.

***Conspiracy to Sell Marijuana and Commit Street Terrorism, Counts 10–15***

On June 18, a call was intercepted in which defendant discussed selling his "granddaddy," or a particular marijuana plant, to Mike Beauchamp for $250. Defendant was in his residence. There was a surveillance camera directed at defendant's house from across the street. Beauchamp was seen arriving at defendant' house. Beauchamp retrieved a large cardboard box he had in the rear seat of his car and walked into defendant's residence. He returned to his car 10 minutes later and placed the large cardboard box back into the rear passenger seat of his car. Investigators could not see the contents of the box.

On July 16, investigators conducted surveillance of defendant's residence after defendant was heard on intercepted calls saying he was making a narcotics sale. Defendant drove to a Valero station in Goshen where he met others. Defendant talked to

someone while at the open trunk of a car where they were seen manipulating a grocery bag. Defendant then got back into his own car. In another intercepted phone call, defendant made a deal for the sale of methamphetamine and later dropped it off at another house.

### Conspiracy to Sell Marijuana and Commit Street Terrorism, Counts 16–20

On July 18, investigators intercepted phone calls in which defendant discussed with Rolando Najera, known as Rolly, the sale of 28 grams of marijuana. Defendant told Najera to get a gun because there were some Southsiders by his house. Agents saw a car drive up to defendant's house. A person walked into the house and later left. During intercepted phone conversations, Najera indicated he was at defendant's house to pick up the 28 grams. Najera left defendant's home in his car and was stopped by the police. Najera called defendant and told him the marijuana had been seized. They talked about exchanging a 30-30 rifle to pay for the seized drugs.

### Receiving Stolen Property and Street Terrorism, Counts 21–22

On July 19, investigators intercepted a phone call in which defendant was asked to house a stolen vehicle. Defendant was looking for a storage spot for the vehicle and sent associates to retrieve it. The vehicle was in the possession of an informant. Defendant told the informant to bring the vehicle to his house. Investigators directed the informant to leave it in a public parking lot. The informant told defendant he got stopped by the police en route.

### Conspiracy to Sell Marijuana and Street Terrorism, Counts 23–26

On July 23, investigators intercepted phone calls in which defendant discussed the sale of marijuana plants to Tony G. A surveillance team saw a car towing a trailer drive up to defendant's residence the next day and load plants into the trailer. Detective Nathan Flaws of the Visalia Police Department testified as a gang expert. Flaws explained that defendant's conduct was consistent with possession of marijuana for sale for the benefit of a criminal street gang. The parties stipulated at the preliminary hearing that there were criminal street gang predicate crimes.

6.

# DISCUSSION

## 1.     Motion to Suppress Wiretap

### *Introduction*

Defendant contends the trial court erred in denying his motion to suppress the wiretap evidence because of alleged defects with the application for the wiretap.  He argues the person for whom the wiretap was sought, the District Attorney of Tulare County, did not execute an affidavit under penalty of perjury.  Defendant argues the attestation of the chief executive officer of the investigating agency is also defective because it was not executed under penalty of perjury.  The third alleged defect in the application for a wiretap identified by defendant is that it sought intercepts for only one cell phone, and not for multiple cell phones.  We find no error.

### *Motion to Suppress Wiretap Evidence*

Defendant filed a motion to suppress the wiretap evidence prior to trial.  His counsel attached to the motion Special Agent Pontecorvo's affidavit in support of the wiretap warrant, the approval of Pontecorvo's application for a warrant by the chief executive officer's designee for wiretaps with the California Department of Justice, Bureau of Narcotic Enforcement, Kent A. Shaw, Assistant Chief, and the trial court's search warrant authorizing the wiretap.

The arguments tendered by defendant to suppress the wiretap evidence were:  (1) the warrant application lacked specificity, (2) the application failed to indicate there had been an adequate investigation outside of the use of wiretaps, (3) Assistant Chief Shaw failed to authorize the application under penalty of perjury, and (4) Shaw's authorization only authorized intercept of calls for a single cell phone.

Pontecorvo's warrant affidavit and application was made as a sworn peace officer and special agent of the California Department of Justice, Bureau of Narcotic Enforcement.  The warrant affidavit and application was executed under penalty of perjury under the laws of California.

7.

The authorization document executed by Assistant Chief Shaw was entitled "REVIEW OF THE CHIEF EXECUTIVE OFFICER" and was dated June 8. It states: "I APPROVE THE APPLICATION." Although the review document was signed, it was not executed under penalty of perjury.

The reply by the People to defendant's suppression motion included a second document executed by Assistant Chief Shaw, also dated June 8, 2010, with the identical title. The difference between the two authorization documents executed by Assistant Chief Shaw was the first authorization was for "one (1) Cellular telephones" and the second was for "three (3) Cellular telephones." The prosecutor explained to the trial court during the suppression hearing that the second authorization was not a recently backdated, signed document but that two such authorizations were part of the original application for a wiretap.

The search warrant and wiretap authorization by the trial court authorized the wiretap of three target phones, including defendant's phone. It stated the application was requested by Phil Cline, District Attorney of Tulare County. The warrant further authorized the wiretap and interception of telephone conversations from subsequently changed phones or phone numbers.

The magistrate denied the suppression motion on November 7, 2012. The court found the existence of two documents of review by the executive officer was the result of clerical error. The court further found the affidavit by the executive officer did not have to be under oath according to the Penal Code.

Defendant renewed the suppression motion on November 14, 2012, adding that Pontecorvo's application failed to identify the officer above him who authorized the application and again arguing that Chief Assistant Shaw failed to sign the authorization document under oath. The renewed suppression motion was denied on December 3, 2012.

Defendant brought the suppression motion two more times and twice it was denied. In the renewed motions, defendant did not argue the district attorney failed to authorize the application for a wiretap under oath.

*Forfeiture*

Defendant argues that pursuant to section 629.50, subdivision (a), the application for an order authorizing interception of electronic communications required in this case the district attorney's personal oath or affirmation.[4] Defendant's appellate counsel acknowledges in his opening brief there is a possibility the district attorney executed such a document here, but it was not produced during the suppression hearing. Defendant's appellate counsel further states a party may not assert theories on appeal that were not raised to the trial court. Defendant nevertheless urges this court to reach the issue. We agree with the People this issue is forfeited.

A party objecting to evidence must make a timely and specific objection in the trial court. This gives both parties the opportunity to address the admissibility of the evidence to permit the trial court to make an informed ruling. It also develops a record for appellate review. In the context of some suppression motions, such as during a warrantless search, the burden is on the People to prove the evidence was lawfully obtained. This burden arises, however, only when a defendant moving to suppress the evidence makes a prima facie claim the search or arrest was without a warrant. (*People v. Davis* (2008) 168 Cal.App.4th 617, 627.) Inadmissible evidence, even unlawfully obtained evidence, may support a criminal conviction where no objection has been interposed by the defendant. The contrary rule deprives the People of the opportunity to

---

[4]In relevant part, section 629.50, subdivision (a) provides: "Each application for an order authorizing the interception of a wire or electronic communication shall be made in writing upon the personal oath or affirmation of the Attorney General, Chief Attorney General, or Chief Assistant Attorney General, Criminal Law Division, or of a district attorney, or the person designated to act as district attorney in the district attorney's absence, to the presiding judge of the superior court or one other judge designated by the presiding judge."

9.

cure the defect at trial and would permit the defendant to gamble on acquittal. (*Id*. at p. 628.)

The California wiretap statute provides that a motion to suppress shall be made, and is subject to review, in accordance with the procedures set forth in section 1538.5. (*People v. Davis*, *supra*, 168 Cal.App.4th at p. 629.) Under California law, review of a suppression issue may be obtained only if the defendant has raised the issue prior to conviction. (*Ibid.*, citing, inter alia, *People v. Gutierrez* (2004) 124 Cal.App.4th 1481, 1484-1485.) Federal courts have also held the failure to make an appropriate motion forfeits a claim that wiretap evidence should have been excluded. (*Davis*, *supra*, at p. 629.)

Generally, suppression of wiretap evidence under the federal statutes is mandated where there is a failure to satisfy any statutory requirements that directly and substantially implement the intention of Congress to limit use of intercept procedures. (*United States v. Giordano* (1974) 416 U.S. 505, 527.) Where there has been an alleged failure to comply with the statutory requirements, it must be adjudicated upon a timely objection. (*U.S. v. Ramirez-Encarnacion* (10th Cir. 2002) 291 F.3d 1219, 1222; *People v. Davis*, *supra*, 168 Cal.App.4th at p. 629.) The failure to bring a timely challenge to wiretap evidence forfeits the claim and the trial court is not obligated to evaluate such a claim on its own motion. (*Davis*, *supra*, at p. 630.)

Defendant brought his suppression motion four times prior to his conviction. He never raised the issue that the Tulare County District Attorney failed to file an affidavit for the application for a search warrant. Defendant acknowledges the possibility in his opening brief that such a document may exist.[5] We note the prosecution did not have the

---

[5]Defendant's original suppression motion was joined by codefendant Felix Ruiz. Ruiz attached the warrant application and court order for the wiretap to his motion. The Ruiz warrant application for a wiretap was brought to the trial court, and granted, about three weeks after the wiretap warrant issued on defendant. The Ruiz warrant application included an affidavit executed under penalty of perjury by Shani Jenkins, Assistant District Attorney for the County of Tulare and the person designated to act pursuant to section 629.50, subdivision (a). We find it improbable that Jenkins executed a warrant application under penalty of perjury as the district

opportunity upon a properly noticed argument by defendant to obtain this evidence or to present any argument on this point to the trial court. We therefore apply the doctrine of forfeiture to this issue.

### *Review of Chief Executive Officer*

Defendant argues Chief Assistant Shaw failed to file an affidavit under oath, thereby invalidating the wiretap application. Defendant relies on what he argues is a difference between state and federal wiretap statutes. We reject his contention.

California law, in general, prohibits wiretapping. California wiretap law authorizes specified law enforcement officials to apply for a court order to intercept wire communications, but only where there is probable cause to believe the target was involved in certain specified offenses, or in a conspiracy to commit those offenses. Drug trafficking, solicitation to commit murder, and participation in a criminal street gang are offenses statutorily qualified for search warrant applications for a wiretap under California's statutory scheme. (*People v. Leon* (2007) 40 Cal.4th 376, 383-384.) California's wiretap law subjects a trial court's authorization of electronic surveillance to a much higher degree of scrutiny than a conventional search warrant. (*People v. Roberts* (2010) 184 Cal.App.4th 1149, 1166.)

The federal statutory scheme establishes minimum standards for the admissibility of wiretap evidence. State law cannot be less protective than the federal act. (*People v. Leon*, *supra*, 40 Cal.4th at p. 384; *People v. Otto* (1992) 2 Cal.4th 1088, 1098.) A finding by a judge approving a wiretap application is entitled to substantial deference. (*Leon*, at p. 385; *People v. Roberts*, *supra*, 184 Cal.App.4th at p. 1172.) A wiretap is unlawful if it is not approved by the head law enforcement official or that official's designee. (*United States v. Giordano*, *supra*, 416 U.S. at p. 523.)

Section 629.50, subdivision (a) sets forth the requirements for a wiretap application. In addition to a written application made upon personal oath or affirmation

attorney's designee in Ruiz's case, but failed to do so a few weeks earlier in defendant's case in what was part of the same investigation by law enforcement.

11.

and the identity of the law enforcement officers making and authorizing the application, subdivision (a)(3) requires: "A statement attesting to a review of the application and the circumstances in support thereof by the chief executive officer, or his or her designee, of the law enforcement agency making the application. This statement shall name the chief executive officer or the designee who effected this review."

The relevant federal wiretap statute, 18 United States Code section 2518, provides in relevant part: "(1) Each application for an order authorizing or approving the interception of a wire, oral, or electronic communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information: [¶] (a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application …."

Defendant acknowledges section 629.50, subdivision (a)(3) does not expressly require the reviewing executive officer attesting to his or her authorization of the wiretap application to make that authorization under oath or affirmation. He contends, however, that 18 United States Code section 2518(1) states that each "'application for an order *authorizing* … the interception of a wire, … or electronic communication … shall be made in writing upon oath or affirmation to a judge of competent jurisdiction ….'" Defendant interprets the word "authorizing" to apply to the chief executive officer, or his or her designee, as the party who must approve the application by oath or affirmation.

We find defendant's application of the word "authorizing" is taken too broadly. We interpret the phrase as referring to an application for "an *order* authorizing" the interception of an electronic communication. Only a court of competent jurisdiction can issue an "order" that in turn authorizes interception of an electronic communication. The authorization of the chief executive officer or designee under the federal statute requires "the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application." (18 U.S.C. § 2518(1)(a).) The purpose of both the state and federal statutes is to accurately show who the investigative officer is and

12.

which chief investigative officer reviewed and approved the application for a warrant. The latter requirement is so the review process within the executive agency seeking the wiretap does not reach into the lower echelons of command. (*United States v. Cox* (8th Cir. 1972) 462 F.2d 1293, 1300.) This policy was achieved in the instant action.

Special Agent Pontecorvo filed an extensive affidavit explaining the reasons he was making an application for a wiretap, and he did so under penalty of perjury. Chief Assistant Shaw signed documents stating he was the designated official who reviewed the wiretap application, reviewed Pontecorvo's application, and approved it. Neither the state nor federal statute mandates the reviewing official approve the submission of a wiretap application under oath or affirmation.

### *Number of Phones in Wiretap Application*

Defendant argues the document executed by Chief Assistant Shaw approved of the filing of an application for one phone, not three phones. Defendant contends the warrant issued for the wiretap was, therefore, defective because the chief executive officer did not review the application in detail and was unaware of the request to intercept three phones rather than just one. Defendant argues the prosecutor's explanation that there were two separate applications, one for one cell phone and the other for three cell phones, and the trial court's finding there was an apparent clerical error in the application "makes little sense." We disagree.

The People argue Pontecorvo's application and affidavit sought to wiretap three different cell phones (one of them belonging to defendant), and the first approval document by Chief Assistant Shaw referring to a single phone appears to be the result of clerical error. The second review by Chief Assistant Shaw executed on the same date as the first one clarified the clerical error and accurately reflected the number of wiretaps sought—three—in accordance with Pontecorvo's affidavit. We agree with the People's interpretation of the record and further note that to the extent a discrepancy existed before the court that issued the warrant, it consisted of clerical error. Mere clerical error is

13.

insufficient to warrant suppression of wiretap evidence. (*U.S. v. Rosario* (2d Cir. 1987) 820 F.2d 584, 585.)

**2.       Sentence on Gang Enhancement**

Defendant pled no contest in count 8 to conspiracy (§ 182, subd. (a)) to commit an assault with a firearm on another person (§ 245, subd. (a)(2)) and admitted a gang enhancement (§ 186.22, subd. (b)(1)(B)).[6] The gang enhancement requires the underlying felony to be a serious felony under section 1192.7, subdivision (c). Defendant argues section 245, subdivision (a)(2) does not qualify as a serious felony under section 1192.7, subdivision (c), and it was, therefore, error for the trial court to sentence him to a term of one year eight months for the gang enhancement. We reject this argument.

Defendant notes paragraph (23) of section 1192.7, subdivision (c) defines as a serious felony "any felony in which the defendant personally used a dangerous or deadly weapon." Defendant argues there is no evidence to support that he personally used such a weapon. He further argues paragraph (28) of section 1192.7, subdivision (c), defining any felony offense committed for the purpose of a gang as a serious felony, cannot be used here as the serious felony that justifies application of the gang enhancement. Defendant points out the California Supreme Court has rejected the argument that all felonies committed for a gang constitute serious felonies for the purpose of section 186.22, subdivision (b)(1)(B). (See *People v. Briceno* (2004) 34 Cal.4th 451, 464-465.) Thus, according to defendant, the prosecution cannot use the same gang-related conduct as both the substantive basis for an offense and to impose additional punishment with a gang enhancement for the same conduct. (*Lopez v. Superior Court* (2008) 160 Cal.App.4th 824, 830-832.) Defendant concludes there is no other qualifying serious felony in subdivision (c) of section 1192.7 that can be used as a basis to impose the gang enhancement.

_____

[6]Section 186.22, subdivision (b)(1) provides that the gang enhancement shall be punished as follows: "(B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years."

Paragraph (31) of section 1192.7, subdivision (c) defines a serious felony as "assault with a deadly weapon, firearm, machine gun, assault weapon, or semiautomatic firearm or assault on a peace officer or firefighter, in violation of Section 245." The People contend this paragraph of section 1192.7, subdivision (c) makes the underlying charge in count 8, a violation of section 245, subdivision (a)(2), a serious felony.[7] The People further contend paragraph 42 of this statute makes it a serious felony to commit "any conspiracy to commit an offense described in this subdivision."

We agree with the People that conspiracy (§ 182) to commit an assault with a deadly weapon (§ 245, subd. (a)(2)) qualifies as a serious felony pursuant to paragraphs 31 and 42 of section 1192.7, subdivision (c). The commission of a serious felony on behalf of a criminal street gang does not constitute impermissible bootstrapping of the substantive gang offense and the gang enhancement. The imposition of a gang enhancement pursuant to section 186.22, subdivision (b)(1)(B) was justified because the underlying felony of conspiracy to commit an assault with a deadly weapon is a serious felony under paragraphs (31) and (42) of section 1192.7, subdivision (c). The trial court did not err in sentencing defendant to a consecutive sentence for the gang enhancement alleged in count 8.

3.     **Section 654 Error**

Defendant contends, and the People concede, the trial court violated section 654 when it sentenced him to concurrent sentences, rather than staying the sentences, on counts 7, 9, 12, 15, 20, 22, and 26 alleging active participation in a criminal street gang (§ 186.22, subd. (a)) because those allegations were based on underlying crimes for which defendant was already sentenced. Defendant contends, and the People also concede, that a section 654 stay of defendant's sentence is necessary on count 19 for sale

_____

[7]The People's opening brief refers to paragraph 32 of section 1192.7, subdivision (c). The People filed a letter of errata on March 20, 2015, explaining that reference to paragraph 32 was a typographical error and the correct reference was to paragraph (31) of section 1192.7, subdivision (c).

15.

or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) because it was the target offense for the conspiracy charged in count 17. We agree with the parties.

Section 654, subdivision (a) prohibits multiple punishment and provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." It has long been established that trial courts may not impose concurrent sentences precluded by section 654 because the defendant is subjected to the term of both sentences even though they are served simultaneously. (*People v. Jones* (2012) 54 Cal.4th 350, 353.)

Because defendant's concurrent sentence on count 19 is based on the same conduct for which he was sentenced on count 17, his sentence on count 19 must be stayed pursuant to section 654.

One of the elements of participation in a criminal street gang is the defendant's willful promotion or assistance of felonious conduct by members of the gang. (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130; *People v. Lamas* (2007) 42 Cal.4th 516, 523.) Section 654 precludes multiple punishment for both gang participation, which includes the element of felonious activity by members of the gang, and the underlying felony used to satisfy this element of gang participation. Thus, a defendant cannot be convicted of both a crime that requires as one of its elements the intentional commission of an underlying offense and the underlying offense itself. (*People v. Mesa* (2012) 54 Cal.4th 191, 197-201, citing *People v. Sanchez* (2009) 179 Cal.App.4th 1297, 1301, 1315 disapproved on another ground in *People v. Rodriguez*, *supra*, at pp. 1136-1137.)

Applying these principles to defendant's convictions, he was sentenced in count 8 for conspiracy to commit assault with a firearm and to an improper concurrent sentence in count 9 for the substantive offense of participation in a criminal street gang. Defendant was sentenced in counts 7, 12, 15, 20, and 26 to improper concurrent terms in violation of section 654 for the substantive offense of participation in a criminal gang

16.

after already being sentenced in related counts for conspiracy to commit narcotics offenses in counts 6, 10, 13, 17, and 24. In count 22 the trial court imposed a concurrent sentence in violation of section 654 after sentencing defendant to a prison term for related conduct in count 21 for receiving stolen property.[8] The trial court erred when it imposed concurrent sentences on these counts.

## DISPOSITION

The judgment is modified as follows. Defendant's concurrent sentences on counts 7, 9, 12, 15, 19, 20, 22, and 26 are hereby stayed pursuant to section 654. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the modification and to forward the amended abstract of judgment to the appropriate authorities.

_____

PEÑA, J.

WE CONCUR:


_____

DETJEN, Acting P.J.


_____

SMITH, J.

---

[8]Counts 6, 11, 14, 16, 18, 23, and 25 were also subject to section 654. The trial court stayed defendant's sentence on these counts.

17.